**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pedro CRUZ–VALDEZ, Reuben Martin-Gonzalez and Manuel Fortunado Ariza-Fuentes, Defendants-Appellants.**

No. 82–5310.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1985.

McMaster & Forman, P.A., James D. McMaster (court appointed), Miami, Fla., for Cruz-Valdez.

Linda L. Carroll (court appointed), Miami, Fla., for Martin-Gonzalez.

Margaret E. Retter, Asst. Federal Public Defender, Robyn J. Hermann, Deputy Federal Public Defender, Miami, Fla., for Ariza-Fuentes.

Robert J. Bondi, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

VANCE, Circuit Judge:

We accepted this appeal for en banc consideration in order to clarify the standards determining sufficiency of the evidence in cases where the primary evidence supporting a defendant's conviction is his presence aboard a vessel containing large quantities of marijuana.

I

On October 23, 1981, a Coast Guard vessel was patrolling the waters approximately ten miles northwest of Key West, Florida, in search of vessels transporting marijuana, when it spotted a 68-foot long shrimp trawler anchored but not fishing. On closer inspection, the Coast Guardsmen noted that the name "Miss Tia" was displayed on a quarter-inch plywood board tacked to the stern of the boat. The placement of the name in this manner is a Coast Guard violation. The shrimp trawler was flying no flag. On boarding the vessel the Coast Guardsmen found the three appellants, Pedro Cruz-Valdez, Reuben Martin-Gonzalez, and Manuel Fortunado Ariza-Fuentes, and a fourth man who identified himself as the captain but could not produce any documents.[1] The Coast Guardsmen then commenced inspecting the vessel. They found that it was equipped with fishing gear but that the gear was rusted and

---

1. The man who identified himself as the captain was a fugitive from justice at the time of the appellants' trial.

could not be used. The winches on each side of the vessel that are used to drop nets in the water were inoperable. Both were rusty and one was severely damaged. The vessel did not appear to be engaged in shrimping. It had no ice, fish or shrimp in the hold. The Coast Guardsmen opened an unlocked hatch and found 220 bales of marijuana in the hold. One bale weighed 43 pounds. All of the appellants were in the one main cabin of the vessel where the living quarters and galley were located. When the marijuana was discovered the persons aboard were arrested and the vessel was taken into port.

An immigration inspector then interviewed the appellants to ascertain their admissibility to the United States. During Ariza-Fuentes' interview, he informed the inspector that his permanent address was in Colombia, that he had joined the vessel about ten days previously in Colombia as a crewman, that this was his first time as a crewman, and that his normal job was as a taxi driver. Ariza-Fuentes stated further that he found out what the cargo was about three or four days after they left Colombia. He said that he did not know when it had been loaded, that they had not visited any ports along the way, and that he did not know the destination of the vessel.

The appellants were convicted in district court of conspiracy to possess with intent to distribute in excess of 1,000 pounds of marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute in excess of 1,000 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A panel of this court, 743 F.2d 1547, affirmed the convictions of Cruz-Valdez and Martin-Gonzalez but, with one judge dissenting, reversed the conviction of Ariza-Fuentes on the ground that the evidence against him was insufficient. This court granted the government's suggestion for en banc reconsideration of the panel's reversal of Ariza-Fuentes' conviction.

## II

Ariza-Fuentes' argument before this court is that his "mere presence" aboard the vessel was insufficient to sustain his conviction. Citing *United States v. Bulman*, 667 F.2d 1374 (11th Cir.1982); *United States v. Hernandez*, 668 F.2d 824 (5th Cir. Unit B 1982); *United States v. MacPherson*, 664 F.2d 69 (5th Cir.1981); *United States v. Willis*, 646 F.2d 189 (5th Cir. 1981); and *United States v. Rojas*, 537 F.2d 216 (5th Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977), he points out that this court has frequently affirmed that the mere presence of a defendant at a place where contraband is discovered is not sufficient to establish guilt.

Our consideration of his claim begins with the basic principles. We view the evidence in the light most favorable to the government, with all reasonable inferences drawn in favor of the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). For Ariza-Fuentes to be convicted of the conspiracy charged, the government was required to prove beyond a reasonable doubt the existence of a conspiracy, his knowing participation in it and his criminal intent. *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). As for the substantive count, the government's burden was to prove beyond a reasonable doubt that he knowingly possessed the marijuana, either actually or constructively, and that he intended to distribute it. *United States v. Littrell*, 574 F.2d 828, 835 (5th Cir.1978). Because the presence of the large quantity of marijuana was clear and uncontested, the proof required to establish the existence of a conspiracy and Ariza-Fuentes' participation in it would also suffice to prove his possession of the marijuana. Ariza-Fuentes does not claim that there was no conspiracy. Rather, he claims that the evidence was legally insufficient to support the jury's conclusion that he was a knowing participant.

We reject his sufficiency claim for two reasons. First, in relying on cases that predate *United States v. Bell*, 678 F.2d 547 (5th Cir. Unit B 1982), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct.

2398, 76 L.Ed.2d 638 (1983), it rests on a misconstruction of the proper standard of review for sufficiency of the evidence. Prior to *Bell*, the test for sufficiency of the evidence was "whether reasonable jurors could find the evidence inconsistent with every hypothesis of innocence." *Rojas*, 537 F.2d at 220. *See Bell*, 678 F.2d at 549 n. 3. In *Bell* we specifically held, however, that "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence.... A jury is free to choose among reasonable constructions of the evidence." *Id.* at 549. Since the mere presence contention must now be considered in light of the modified standard, the analysis supplied by pre-*Bell* cases is not controlling. *See United States v. Pintado*, 715 F.2d 1501 (11th Cir.1983); *United States v. Blasco*, 702 F.2d 1315 (11th Cir.1983). Arguments setting forth a reasonable hypothesis of innocence are properly presented to the jury, but the existence of such a hypothesis no longer compels an acquittal. Here, the evidence was such that a reasonable trier of fact could find that it established guilt beyond a reasonable doubt.

Second, the facts of this case are such that under any standard applied by this court the evidence was sufficient to support a conviction. "[P]articipation in a conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collocation of circumstances.'" *Malatesta*, 590 F.2d at 1381 (citing *Glasser*, 315 U.S. at 80, 62 S.Ct. at 469). The totality of the evidence in true "mere presence" cases is much less substantial than the evidence in cases such as the one now before the court. Occasionally, as in *Willis*, the prosecution through either oversight or lack of its availability produces no evidence against a given defendant except that he was present when contraband was discovered. In most cases including this one, however, the evidence establishes not mere presence but presence under a particular set of circumstances. In such a case the task of determining the sufficiency of the evidence is not aided by the ritualistic invocation of the "mere presence" rubric. Rather, it requires an examination of all of the proved circumstances, including presence, to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation.

Recognizing this reality, cases in this circuit have established some guidelines for evaluating the sufficiency of the evidence in cases reflecting the fact pattern before us. Those most frequently relied on are *United States v. Alfrey*, 620 F.2d 551 (5th Cir.), *cert. denied*, 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980); and *United States v DeWeese*, 632 F.2d 1267 (5th Cir. 1980), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981). In considering one appellant's "mere presence" argument the *Alfrey* panel recognized at the outset that a crew member on a small marijuana laden vessel on a long voyage was in a very different position from a passenger in a marijuana bearing automobile on land. It identified some of the factors on which the inference of guilt could rest:

> In this case the probable length of the voyage, inferable from the proximity of the border and the documentary evidence, the large quantity of marijuana on board, which made it indisputable that Alfrey and Haight had knowledge of the marijuana, and the necessarily close relationship between the captain of the trawler and his two man crew were factors from which the jury could reasonably find guilt beyond a reasonable doubt.

*Alfrey*, 620 F.2d at 556. The three identical factors were found in *DeWeese* to support a finding of guilt beyond a reasonable doubt. *Id.*, 632 F.2d at 1272. Later cases have clarified the test supplied in *Alfrey* and *DeWeese*. While criticizing *Alfrey* in his special concurrence in *United States v. Freeman*, 660 F.2d 1030, 1038 (5th Cir. Unit B 1981), *cert. denied*, 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982), for example, Chief Judge Godbold observed that the third factor, the close relationship between captain and crew, is always inferable from the evidence of a long voyage on a small vessel. Other cases have apparently confirmed Judge Godbold's observation by

finding the evidence sufficient based on the defendant's presence on a long voyage on a small vessel with a large quantity of marijuana. *See, e.g., United States v. Sarda-Villa,* 760 F.2d 1232 (11th Cir.1985); *United States v. Hernandez,* 668 F.2d 824 (5th Cir. Unit B 1982).

■ Evidence that meets the standards articulated in the *Alfrey* line of cases continues to meet current tests of sufficiency. Our later cases demonstrate, however, that the factors considered in *Alfrey* are only a few of many that may suffice to establish knowing participation in criminal activity. The rule is one of reason. What could a jury reasonably find beyond a reasonable doubt? If the evidence establishes that a large quantity of contraband was in plain view or could be smelled or was in a place where a person on a vessel would ordinarily discover it, a jury may reasonably infer that a person found on the vessel had knowledge of the contraband. Indeed, we have frequently held that when crewmen are found aboard a vessel on which the presence of contraband is obvious a conspiracy may be inferred. *United States v. Miller,* 693 F.2d 1051 (11th Cir.1982); *United States v. Groce,* 682 F.2d 1359 (11th Cir.1982); *United States v. Julio-Diaz,* 678 F.2d 1031 (11th Cir.1982). The circumstances required to establish voluntary participation in the criminal acts that are afoot may vary. There is no set formula. A jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present.

■ Although the sufficiency test can thus be satisfied by numerous kinds of evidence, we think it appropriate that our cases have given one factor—the quantity of marijuana on board a vessel—particular attention. This is simply a reflection of the rule of reason articulated above. In the first place, under most circumstances large quantities of contraband on a small vessel make it most unlikely that the persons on board will be ignorant of its presence. Whereas it may be unreasonable for a jury to infer knowledge by a particular seaman of the presence of a kilogram of cocaine on

a large freighter, it may be quite reasonable for the same jury to find that all of the persons on board a small boat that is packed with marijuana must have known about it.

■ In the second place, we have recognized that it is highly improbable that drug smugglers would allow an outsider on board a vessel filled with millions of dollars worth of contraband. *See, e.g., United States v. Villegas-Rojas,* 715 F.2d 564, 566 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984) (recognizing such improbability as a factor that the jury could take into account); *cf. DeWeese,* 632 F.2d at 1272 ("We find particularly persuasive the government's argument that it is illogical to believe that one person would attempt to smuggle eight million dollars of marijuana from Colombia to the United States without pre-arranged assistance"). Evaluation of this factor calls into play the common sense and general knowledge of both the jury and the court without expert testimony on the point. This is quite proper, however, because jurors are correctly instructed to use their common sense and to evaluate the facts in light of their "common knowledge of the natural tendencies and inclinations of human beings." *See* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 15.01 (3d ed. 1977) 1980 Cumulative Pocket Part; *see also United States v. Marino,* 562 F.2d 941 (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). It has long been the law that in giving effect to such inferences as may reasonably be drawn from the evidence juries properly apply their common knowledge, observations and experience in the affairs of life. *Head v. Hargrave,* 105 U.S. (15 Otto) 45, 49, 26 L.Ed. 1028 (1881); *Chicago, M. & St. P. Ry. Co. v. Moore,* 166 F. 663, 666 (8th Cir.1909). Our view of the sufficiency of the evidence on appeal is similarly conditioned. "What everybody knows the court must know...." *Jacobson v. Massachusetts,* 197 U.S. 11, 30, 25 S.Ct. 358, 363, 49 L.Ed. 643 (1905). Thus we frequently take into account matters of

common sense or general knowledge.[2] That knowledge changes with changing times and conditions. It is an unfortuante fact of modern life that juries and courts know much more about commerce in controlled substances than they did a decade or more ago. We also know without specific evidence matters that frequently have been proved in prior prosecutions. *United States v. Garcia-Gonzalez,* 702 F.2d 520 (5th Cir.1983). Among these are the existence of normal but deadly hazards implicit in narcotics trafficking, the ever-present risks of robbery or "rip offs,"[3] the need for strong arm men or guards to safeguard transactions[4] and the almost ritualistic series of precautionary maneuvers that often characterize large controlled substance transactions.[5] In light of these familiar realities, we think it reasonable for a jury to conclude that in the course of transporting or distributing millions of dollars worth of readily marketable marijuana, through channels that wholly lack the ordinary protections of organized society, a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders.

▇ Given the particular importance of the presence of a large quantity of marijuana, we reaffirm our holding in *United States v. Munoz,* 692 F.2d 116, 118 (11th Cir.1982) that once it is established that the defendant was a crew member on a vessel so laden the government's burden to prove participation is relatively light. Further-

more, that burden may be met by any one of a number of factors. While *Alfrey* and *DeWeese* point to a long voyage with the inference of a close relationship between captain and crew, we may also look to other circumstances such as suspicious behavior or diversionary maneuvers before apprehension, an attempt to flee, inculpatory statements made after apprehension, witnessed participation as a crewman, whether the contraband was obvious, and the absence of supplies or equipment necessary to the vessel's intended use. The government's relatively light burden of proving knowing and voluntary participation by a person aboard a marijuana laden vessel may be met by any evidence sufficient to enable a reasonable jury to find his guilt beyond a reasonable doubt.

▇ Application of these principles in the present case presents no difficulty. Ariza-Fuentes admitted that he had been a crew member and had been on the vessel since it left Colombia ten days before its seizure.[6] The vessel was a flagless shrimp trawler but its equipment was inoperative and it was clearly unfit for use as such. There was a single cabin and an unlatched hold where thousands of pounds of marijuana, worth millions of dollars, were stowed. The totality of the evidence was clearly sufficient to support Ariza-Fuentes' conviction as well as that of the other ap-

---

2. In this manner courts have without evidence accepted as common knowledge: that bookmaking is often carried on over the telephone, *Spinelli v. United States,* 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); that large quantities of marijuana are smuggled across the Mexican border daily, *Thomas v. United States,* 372 F.2d 252, 254 n. 4 (5th Cir.1967); that marijuana smells like marijuana, *United States v. Arrasmith,* 557 F.2d 1093, 1094 (5th Cir.1977); that used car salesmen know the nature of a bargain offer of an out-of-state car without title, *Lathers v. United States,* 396 F.2d 524, 532 (5th Cir.1968); that continuing purchases in combination of jugs, sugar and fuel oil is a requisite in distilling, *Wilson v. United States,* 320 F.2d 493 (5th Cir.1963); that mothballs are frequently used to counteract the odor of marijuana, *Romero v. United States,* 318 F.2d 530, 532 n. 2 (5th Cir.), *cert. denied,* 375 U.S. 946, 84 S.Ct. 357, 11 L.Ed.2d 277 (1983).

3. See, e.g., *United States v. Dekle,* 768 F.2d 1257 (11th Cir.1985) (thefts of marijuana from persons dealing in marijuana).

4. See, e.g., *United States v. Mers,* 701 F.2d 1321, 1324 (11th Cir.1983) (use of armed guards Myers and Ferrante to protect marijuana shipment); *United States v. Phillips,* 664 F.2d 971, 986 (5th Cir. Unit B 1981) (appellant Grant worked as Black Tuna organization's security chief in charge of protecting marijuana cargos).

5. See, e.g., *United States v. Aguiar,* 610 F.2d 1296 (5th Cir.1980).

6. The jury was free to believe the inculpatory part of his statement and disbelieve the exculpatory part.

pellants. The convictions of all appellants are, therefore,

AFFIRMED.