UNITED STATES of America, Plaintiff,

v.

Genaro PEREZ, et al., Defendants.

No. 86–452–Cr.

United States District Court,
S.D. Florida.

Oct. 20, 1986.

---

Sharon Kegerreis, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Mario Cano, Coral Gables, Fla., and Ellen L. Leesfield, Coconut Grove, Fla., for defendants.

## ORDER AND MEMORANDUM OPINION

ATKINS, District Judge.

This cause is before the court on defendants', Genaro Perez and Ramon Mendez,[1] motion for a judgment of acquittal after discharge of jury pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. Defendants were convicted of conspiracy to possess marijuana with intent to distribute after a four day trial. The same jury acquitted defendants on charges of possession of marijuana with intent to distribute. After carefully reviewing the motion, memorandum, and the record, I conclude that the evidence presented at trial was such that a reasonable trier of fact could find that it established guilt beyond a reasonable doubt.

### I

Defendants were Cuban "Mariel" entrants who are not permitted to leave American territory. They boarded the vessel "San Juan" in Key West claiming that they were taking it to Puerto Rico where it was to be sold. Instead, the vessel sailed to Panama where several Columbian co-defendants[2] brought 282 bales of marijuana to the "San Juan" in canoes. The marijuana weighed approximately 20,000 lbs. and was worth roughly ten million dollars. It was stored in the main hold and in the engine room, and occupied almost three-quarters of the vessel.

---

1. Defendant Mendez filed a motion to adopt Perez' motion.

2. The Columbian co-defendants pled guilty.

At trial, the court allowed defendants to present their defense of duress/coercion. The defendants maintained that they were incensed that the vessel went to Panama, and that they refused to help load the vessel with marijuana. They asserted that they maintained cordial relations with the other crewmembers out of fear for their safety. After all, defendants, were surrounded by several foreign nationals.

The government called James Jimenez, one of the defendants who had previously pled guilty to conspiracy to possess marijuana with intent to distribute, to testify against Perez and Mendez. Jimenez testified that defendants had the same responsibilities as all other crewmembers on the vessel. In addition, Jimenez also testified that Perez maintained a good sense of humor throughout the voyage and was laughing and joking with other crewmembers both before and after the marijuana was loaded.

## II

In reviewing the sufficiency of the evidence, the court must consider the evidence in the light most favorable to the government with all reasonable inferences drawn in favor of the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) *(en banc)*. Under this standard, evidence is sufficient to uphold the jury's verdict if a reasonable trier of fact could find that it establishes guilt beyond a reasonable doubt.

Participation in a conspiracy need not be proven by direct evidence that co-conspirators expressly agreed to undertake an illegal venture. Instead, the jury may infer a common purpose and plan from defendant's actions. *See United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) *(en banc)*, *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). Moreover, under certain circumstances, the jury is free to draw an inference of guilt from defendants' presence aboard a vessel carrying a large quantity of illegal drugs. *See*

*United States v. Cruz-Valdez*, 773 F.2d 1541 (11th Cir.1985) *(en banc)*, *cert. denied. sub nom.*, *Ariza-Fuentas v. United States*, —— U.S. ——, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). Yet, this factor is not always conclusive. *See United States v. Vidal-Hungria*, 794 F.2d 1503, 1515, 1531 (11th Cir.1986).

In *Vidal-Hungria*, the Eleventh Circuit considered how much weight should be attached to the evidence showing that defendant was on board a vessel containing large quantities of marijuana. The court concluded "that this fact simply is not a controlling factor...." *Id.* 794 F.2d at 1531. Instead, it remains an important factor which may be considered "in light of the totality of the circumstances presented." *Id.*

Initially, the court discussed the significance of large quantities of drugs on a vessel:

In *Cruz-Valdez* we explained that a large quantity of marijuana was a significant factor for two reasons—first, "under most circumstances *large quantities* of contraband on a *small vessel* make it most unlikely that the persons on board will be ignorant of its presence;" and second, "it is highly improbable that drug smugglers would allow an outsider on board a vessel filed with million of dollars of contraband."

*Id.* (citations omitted and emphasis added). Then, the court examined the facts of each case to reconcile the holdings.

In *Cruz-Valdez*, a large quantity of marijuana "was found in an unlocked hatch on a" small (68') shrimp boat "whose fishing gear was rusted and unoperable and on which no evidence of legitimate fishing efforts was found." *Id.* Conversely *Vidal-Hungria* involved a completely different situation. The ship was a large freighter (156') containing a large quantity of legitimate cargo. The drugs were hidden in a secret compartment and could not be easily found. In fact, the Coast Guard officers who boarded the vessel searched it for over two hours before the smell of marijuana

890

could be detected. Ultimately, the officers had to carefully study the ship's blueprint to find the hidden compartments in which the marijuana was secreted.

*Vidal-Hungria* is distinguishable from the case at bar. Utilizing a "totality of the circumstances" approach, many factors must be considered. The court has specified a few: the size of the vessel, the closeness of the relationship between the captain and the crew, the absence of equipment necessary to the proper use of the vessel, witnessed participation of the crewmembers, obviousness of the drugs, inculpatory statements made after apprehension, and suspicious conduct by the crew before apprehension. *See id.* at 794 F.2d at 1531–33. Of course, each case must be decided according to its unique set of circumstances.

*Vidal-Hungria* does not control the outcome of the case at bar. The F/V San Juan had no legitimate cargo of any kind, and no hidden compartments. Instead, the marijuana was in open view in the main hold and the engine room. Moreover, defendants admitted their knowledge of the marijuana and their participation as crewmembers. Under these circumstances, the reasoning of *Cruz-Valdez* applies. The large and valuable cargo of marijuana, located in open view on the vessel, gives rise to the permissible inference that a drug smuggler would not involve a reluctant crewmember in the drug smuggling enterprise. Furthermore, the testimony of other crewmembers that defendant Perez shared responsibilities and remained in good humor on the vessel support the conclusion that he was a knowing and willing participant in a conspiracy to possess marijuana.

■ In this case, defendants presented a defense based upon coercion. Yet, a defense of duress depends largely upon the jury's evaluation of the credibility of the witnesses. The jury was entitled to reject the testimony of defendant Mendez and to find defendants participated knowingly and voluntarily. *See Malatesta,* 590 F.2d at 1381. Thus, giving deference to the jury's findings of credibility, the evidence is suffi-

cient to prove that defendant knowingly and intentionally participated in a conspiracy.