**UNITED STATES**

v.

**Jacques John GRENIER, Defendant.**

**No. 96–21–CR–FTM–17.**

United States District Court,
M.D. Florida.

March 17, 1997.

Russell C. Stoddard, Asst. U.S. Atty., U.S. Attorney's Office, Ft. Myers, FL, for U.S.

John Charles Coleman, Coleman & Coleman, Ft. Myers, FL, for Defendant.

### MEMORANDUM DECISION AND ORDER

GAGLIARDI, Senior District Judge.

Defendant moves this Court for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29. Because the Court finds that the government failed to meet its burden of proof at trial, the Court hereby grants the motion.

### I. *Background*

In October of 1995, the United States Customs Department began surveillance of the Blue Penguin II sailboat, which was harbored at the Gasparilla Marina, in Punta Gorda, Florida. The sailboat was owned by Neil Douglas Everett, whom Customs Agents suspected was importing marijuana into the United States.

On December 28, 1995, Everett sailed the Blue Penguin II from the marina with his wife and another friend. On December 31, 1995, Customs Agents boarded the sailboat, but they did not discover any violations. The sailboat was next observed in Jamaica on February 4, 1996, and it was not seen again until it returned to Gasparilla Marina on February 21, 1996.

By the time the Blue Penguin II returned to the marina, Defendant had replaced Everett's wife and friend on board the sailboat. Prior to this date, Customs officials had no information linking Defendant either to Everett or to the Blue Penguin II. After the sailboat reentered United States waters without first reporting to Customs, in violation of federal law, Customs Agents boarded the sailboat. The Agents then questioned Everett and Defendant separately about their travels. During this questioning, Defendant stated that he had boarded the sailboat in Cuba and denied travelling to Jamaica. Defendant further denied that he had a passport. When the Agents searched the vessel, however, they found documentation indicating that the sailboat had left Jamaica on February 10, 1996, with Defendant on board. The Agents also located Defendant's passport in a pouch that Everett had been holding during the documentation check.

During their initial search of the sailboat, Customs Agents neither saw nor smelled any narcotics, nor did they observe anything that would suggest that the sailboat had been rebuilt to conceal narcotics. However, based upon their earlier suspicions and their conversations with Everett and Defendant, Customs Agents employed a canine unit to determine whether any narcotics had been secreted in the vessel. The dog did not respond to Defendant or to any of his belongings, but it vigorously alerted to the engine room. Despite the dog's response to the engine room, the Agents were unable to determine where the marijuana had been hidden, and after several hours, they were forced to pull the sailboat out of the water. Eventually, after the Agents removed the engine from the sailboat with a crane, they located approximately 1,800 pounds of marijuana secreted in the keel. Due to the enormous quantity of marijuana, it took several Agents between one and two hours to unload the bags from the sailboat. Although the Agents noticed that various initials had been written on the bags, none of the initials matched those of Defendant. Later tests failed to detect any of Defendant's fingerprints on the bags or on those parts of the sailboat that concealed the access to the storage area in the keel.

On February 29, 1996, a grand jury returned a four-count indictment charging Everett and Defendant with conspiracy to import marijuana, in violation of 21 U.S.C. § 963; importation of marijuana, in violation of 21 U.S.C. § 951; conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Shortly before trial was scheduled to begin in the case, Everett pled guilty to all four counts of the indictment.

Defendant maintained his innocence, and his case was tried before a jury. At trial, the government did not show where or when, during Everett's eight-week trip, the marijuana had been purchased, nor did it offer evidence suggesting that Defendant participated in or otherwise knew of its onloading. The government showed only that Defendant had been on board the Blue Penguin II and that he had lied twice to Customs Agents. After deliberating, the jury convicted Defendant on all four counts.

Defendant moved for a judgment of acquittal at the close of the government's case and at the close of all of the evidence, and the Court reserved decision. After reviewing the evidence presented at trial under the appropriate legal standards, the Court now concludes that there is insufficient evidence to convict Defendant of any of the charges against him.

## II. *Standard of Review*

▮ Federal Rule of Criminal Procedure 29 allows a court to grant a defendant's motion for a judgment of acquittal on one or more counts if the evidence is insufficient to sustain a conviction. If the court reserves decision, it must decide the motion on the basis of the evidence presented at the time it reserved decision. The standard of review, however, is the same, regardless of when the defendant makes his motion:

The District Court must determine whether the relevant evidence, viewed in the light most favorable to the Government, could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of the defendant's guilt be-

yond a reasonable doubt.... All reasonable inferences which tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor.

*United States v. Burns,* 597 F.2d 939, 941 (5th Cir.1979).

■ To sustain a conviction on the conspiracy counts, the government must show, beyond a reasonable doubt, that two or more people, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan and that Defendant knowingly, intentionally, and willfully joined in this venture. To sustain a conviction on the importation count, the government must prove, beyond a reasonable doubt, that Defendant knowingly and willfully imported marijuana into the United States. To sustain a conviction on the possession count, the government must prove, beyond a reasonable doubt, that Defendant knowingly and willfully possessed marijuana with the intent to distribute it. Thus, conviction on any count requires the government to demonstrate scienter. Although the government may establish this element through the use of circumstantial evidence, a defendant's mere presence at a crime scene is not enough.

### III. *Discussion*

■ The government did not offer any direct evidence at trial to show either that Defendant was present when the marijuana was loaded on board or that he was otherwise aware that narcotics were stored in the sailboat's keel. Where direct evidence is not available against a defendant on board a narcotics-laden vessel, the Eleventh Circuit has developed a specialized test to establish a tie between the defendant and the drugs or to show that the defendant had the opportunity to learn of and join the illicit venture. *United States v. Curra–Barona,* 706 F.2d 1089, 1091 n. 3 (11th Cir.1983). Under this test, courts must consider the evidence in light of the following factors: (1) the size of the narcotics shipment; (2) the probable length of the voyage; (3) the necessarily close relationship between the captain and crew; (4) the obviousness of the contraband; and (5) other factors, such as suspicious behavior before apprehension, attempts to flee, the absence of supplies or equipment necessary for the vessel's intended use, and inculpatory statements made after apprehension. *United States v. Cruz–Valdez,* 773 F.2d 1541, 1545–46 (11th Cir.1985). Because the rule is one of reason, the Court must not consider the existence of each of the *Cruz–Valdez* factors in isolation; rather, the Court must analyze these factors in light of the "totality of the evidence." *Id.*

### A. The Size of the Narcotics Shipment

■ As a general rule, once the government shows that a large amount of narcotics were stored in the vessel, its burden under *Cruz–Valdez* becomes relatively light and can be met by demonstrating the existence of any one of the other four factors. *Id.* at 1546–47. The reasoning behind this rule is twofold. First, in most cases, "large quantities of contraband on a small vessel make it most unlikely that the persons on board will be ignorant of its presence." *Id.* at 1546. Second, because large quantities of narcotics are generally readily visible, "it is highly improbable that drug smugglers would allow an outsider on board a vessel filled with millions of dollars worth of contraband." *Id.* In the present case, Customs Agents discovered almost 1,800 pounds of marijuana secreted in the sailboat. Under the general rule, therefore, the government's burden of proving that Defendant knew about the marijuana on board would be relatively light.

■ The Court finds, however, that the rationale behind this general rule does not apply to the present case. The Agents testified that they could neither see nor smell the marijuana, and they were only able to discover it through the assistance of a canine unit. There is thus no reason to infer that Defendant knew that the marijuana had been secreted in the keel of the sailboat. The Court finds that the facts of this case are analogous to those in *Vidal–Hungria,* where the Eleventh Circuit held that the presence of a large amount of marijuana on board a vessel was not a controlling factor in light of the totality of the circumstances presented. *United States v. Vidal–Hungria,* 794 F.2d 1503 (11th Cir.1986). Thus, as in *Vidal–Hungria,* the government is required to furnish a greater

amount of additional evidence in order to meet its burden of proof.

The government also argues that the size of the shipment indicates that Defendant participated in loading the marijuana on board. However, the Court does not find this argument to be persuasive. Although the government showed at trial that it was unlikely that Everett loaded the marijuana on board by himself, the government did not show when or where, during Everett's eight-week trip, the marijuana was loaded. It was thus just as likely as unlikely that Defendant assisted Everett with the drugs. Therefore, the mere fact that someone besides Everett loaded the drugs on board does not establish Defendant's participation in the venture beyond a reasonable doubt.

## B. Length of the Voyage

Although it is clear that Defendant had spent at least eleven days on board the Blue Penguin II, the government did not present any evidence to suggest that Defendant could have discovered the marijuana. Unlike those cases cited by the government, where the marijuana was in plain view, stored in an unlocked hatch, or stored in a part of the vessel that had obviously been altered to conceal its presence, the marijuana in the present case was so well hidden that it took several Customs Agents several hours to locate it. Thus, the length of the voyage, without more, cannot be used to infer that Defendant knew of the marijuana's presence on the Blue Penguin II.

## C. The Necessarily Close Relationship between Everett and Defendant

While the relationship between Everett and Defendant was "necessarily close," due to the length of time that the two spent on board a small sailboat, the Court does not find this factor to be dispositive. There was no indication that the two were friends, that they had previously sailed together, or that Customs officials were also suspicious of Defendant. Moreover, because the marijuana was so well hidden, there is no reason to presume that Everett would have had to inform Defendant of its presence on board.

## D. The Obviousness of the Marijuana

As discussed in detail above, it is clear that the marijuana was stealthily secreted in the sailboat, and the government offered no evidence to support the inference that Defendant could have discovered its existence in the keel.

## E. Other Factors

There is no evidence that Defendant engaged in ·suspicious behavior prior to his apprehension by Customs Agents. Although the Blue Penguin II failed to notify Customs when it reentered United States waters, the evidence presented at trial indicated that such responsibility lies with the captain of the vessel and not the crew. Nor was evidence presented to show that Defendant attempted to flee from Customs Agents. On the contrary, the evidence showed that Everett and Defendant remained on the dock for approximately six hours while the Agents searched the sailboat. Further, Everett and Defendant were putting the sailboat to its intended use prior to their apprehension. The government did not show that the sailboat was heavy, did not steer well, or was usually difficult to operate. Thus, none of these "other factors" were present, and they do not support the inference that Defendant knew that marijuana had been secreted on board the vessel.

The evidence also did not show that Defendant made any inculpatory statements when he was apprehended. The only evidence that the government offered against Defendant was that he lied to Customs Agents when he denied travelling to Jamaica and denied having a passport. Given the total circumstances and the lack of any other evidence against Defendant, however, the Court finds that these statements alone cannot satisfy the government's burden of proving beyond a reasonable doubt Defendant's knowledge in each of the four counts.

A review of the narcotics-laden vessel cases supports the Court's conclusion. In each of the cases where the Eleventh Circuit has found that the government satisfied the test summarized in *Cruz–Valdez,* there was strong evidence linking the defendants to the drugs. *United States v. Mendoza–Cecelia,*

963 F.2d 1467, 1480 (11th Cir.1992) (court inferred knowledge where marijuana was in plain view, defendants had to sleep on bales, and odor was overwhelming); *United States v. Garate–Vergara*, 942 F.2d 1543, 1548 (11th Cir.1991) (court inferred knowledge of only those defendants whose clothes had silver paint which matched the fresh paint on the cargo hold that contained cocaine); *Cruz–Valdez*, 773 F.2d at 1543–44 (court inferred defendants' knowledge of marijuana where vessel was totally inoperable as a shrimp trawler and drugs were stored in an unlocked hatch); *United States v. Rojas*, 731 F.2d 707, 710–711 (11th Cir.1984) (court inferred knowledge where defendant was friend of ship captain, had met with another man in the Bahamas who had a large amount of cash, and was not surprised when marijuana was discovered on board); *Curra–Barona*, 706 F.2d at 1089 (court inferred knowledge where bales of marijuana were strewn throughout cabin); *United States v. Alfrey*, 620 F.2d 551, 555 (5th Cir.1980) (court inferred knowledge where marijuana was in plain view and smell was overwhelming).

By contrast, where there was no strong evidence to link a defendant to the narcotics found on board a vessel, the Eleventh Circuit has held that the defendant's conviction could not stand. *Garate–Vergara*, 942 F.2d at 1548–49 (evidence was insufficient to convict those defendants who did not have paint on their clothes because cocaine was not stored in a visible or easily detectable location); *Vidal–Hungria*, 794 F.2d at 1514–16 (evidence was insufficient to convict defendants where vessel was apparently being put to its intended use, marijuana was secreted in a well-hidden compartment and emitted no odor, government did not submit any evidence of fingerprints from the hidden compartments, no marijuana residue was detected on defendants, and defendants fully cooperated with Coast Guard officials); *United States v. MacPherson*, 664 F.2d 69, 74 (5th Cir. Unit B 1981) (evidence was insufficient to convict defendant where marijuana was neither visible nor odorous and government only proved that defendant was on board the vessel when Customs Agent discovered the drugs).

In light of these two lines of cases, the Court finds that the totality of the circumstances presented do not support the inference that Defendant knew that marijuana was secreted in the keel of the sailboat. The government's proof that Defendant twice lied to Customs Agents, without more, simply does not establish scienter beyond a reasonable doubt. The evidence is thus insufficient to sustain Defendant's conviction.

## IV. *Conclusion*

After considering each of the *Vidal–Hungria* factors, the Court concludes that the government failed to prove that Defendant knowingly participated in the crimes with which he has been charged. Without this showing of knowledge, however, the government cannot meet its burden of proof. Accordingly, the Court grants Defendant's motion for a judgment of acquittal on all four counts.

Defendant has also moved for a new trial and to substitute counsel. In light of the Court's decision to grant Defendant's motion of acquittal, these other motions are denied as moot.

So Ordered.