[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11156
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20535-CMA-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE RAUL ROMERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 30, 2013)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Jorge Raul Romero appeals his convictions and sentences for (1) conspiracy to receive and possess stolen goods and to commit cargo theft, (2) receipt and possession of stolen goods, (3) cargo theft, and (4) obstruction of justice. Romero asserts several issues on appeal, which we address in turn. We affirm Romero's convictions and sentences.

*Sufficiency of the Evidence*

Romero first contends there was insufficient evidence for the jury to convict him of each of the four counts. Romero asserts the evidence at trial was insufficient to establish that he participated in a conspiracy because it did not show that he joined in any criminal activity. He further argues he cannot be liable for possession of stolen property, even under an aiding and abetting theory, because he never took any action with respect to the stolen goods or asserted a right to possession to them. He argues he did not aid or abet the theft of cargo, because the theft was completed before Romero ever learned of it. Romero asserts he did not give any false information about the crimes and was not required to disclose any additional information to warrant a conviction for obstruction of justice. Viewed in the light most favorable to the Government, the evidence at trial supports Romero's convictions as to each count in the indictment.[1]

---

[1] We review *de novo* whether there is sufficient evidence to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the verdict. *United States v. Doe*,

2

*Count 1—Conspiracy*

With respect to the conspiracy conviction, there is sufficient circumstantial evidence to support the conviction. *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006) ("The government is . . . not required to demonstrate the existence of a 'formal agreement,' but may instead demonstrate by circumstantial evidence a meeting of the minds to commit an unlawful act."). Romero was present at the warehouses on the day the tractor trailer arrived at the warehouses and the pallets were unloaded, and during the time that co-conspirators were moving boxes of stolen laptops from one warehouse to another. Further, Romero helped push two cars out of the way, and had to move his own SUV, so that a box truck could be loaded. Boxes containing the stolen computers were visible from where Romero was standing. Testimony supported that Romero told his co-conspirators that he had seen the computers and asked if a co-conspirator was getting something out of the deal. Romero also told a co-conspirator that he was interested in acquiring one of the stolen computers. Finally, there was evidence that a co-conspirator asked Romero to go to his warehouse when the warehouse was full of stolen computers to pick up a pallet jack and return it.

---

661 F.3d 550, 560 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1648 (2012). Where the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict. *Id.*

From the evidence of Romero's presence at critical times, and knowledge of the stolen computers, the jury could reasonably have inferred that Romero was a co-conspirator. *See United States v. Cruz-Valdez*, 773 F.2d 1541, 1547 (11th Cir. 1985) ("a prudent smuggler is not likely to suffer the presence of unaffiliated bystanders"). Although Romero seeks to distinguish *Cruz-Valdez* on the basis that, because he was assigned to patrol the warehouse area, the conspirators had to tolerate his presence, he offers no explanation for why a co-conspirator would have permitted him to retrieve the pallet jack from his warehouse while it was still full of stolen computers. Nor has he otherwise borne his burden of explaining why the jury could not have inferred that he knowingly joined the conspiracy.

There was also evidence of Romero's active participation in the conspiracy. Evidence of his role included testimony that a co-conspirator "had the Hialeah Gardens Police Department under control." In addition, there was evidence that, moments after hearing a detective announce that he was going to investigate a tip about the sale of stolen laptop computers from the warehouse, Romero left the roll call room and placed a call to a co-conspirator. There was also evidence that Romero tipped off his co-conspirators to a possible raid, allowing a co-conspirator to remove evidence.

The evidence was sufficient to show a conspiracy existed, Romero was aware of the conspiracy, and he knowingly joined the conspiracy by committing

4

acts which furthered the crime by helping to protect the other participants from apprehension by the police.[2] *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009) (listing the elements of conspiracy).

*Counts 2 and 3—Cargo Theft and Possession of Stolen Goods*

With respect to his convictions for cargo theft and possession of stolen goods, Romero argues there was no evidence he took any action "to receive, possess, conceal, store, sell, or dispose of the stolen goods." There was, however, sufficient evidence to sustain a conviction for both offenses on an aiding and abetting theory, because the Government proved that the substantive offenses were committed, and that Romero associated himself with the criminal venture and committed acts which furthered the crimes. *See United States v. Hamblin*, 911 F.2d 551, 557 (11th Cir. 1990) (explaining that to prove aiding and abetting, under 18 U.S.C. §2, the government must demonstrate a substantive offense was committed, the defendant associated himself with the criminal venture, and he committed some act which furthered the crime).

---

[2] Romero's post-arrest statement and trial testimony also supported his conspiracy conviction. Romero's post-arrest statement was false in several ways—for example, Romero initially lied about his discussion with a co-conspirator in the back of the police car, and denied making any phone calls or sending any text messages to any of the other co-conspirators, from which the jury could reasonably infer a consciousness of guilt. *See United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003) (stating a jury may infer guilty knowledge from defendant's false statement to arresting officer). Moreover, it was permissible for the jury to reject Romero's testimony at trial—that he did not know there were stolen computers in the warehouses, that he took no part in any efforts to remove the DVR from one warehouse, and the reason he called one of his co-conspirators after roll call was to discuss having coffee—and conclude the opposite of his testimony was true. *See United States v. Jimenez*, 564 F.3d 1280, 1285 (11th Cir. 2009).

*Count 4—Obstruction of Justice*

The evidence was also sufficient for Romero's conviction for obstruction of justice. The evidence demonstrated that Romero was guilty of both "knowingly making a false statement," and "intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement." 18 U.S.C. §§ 1515(a)(3)(A) and (B). Romero knowingly made a false statement when he was dispatched to one of the warehouses to investigate a burglar alarm, and reported that "everything was fine." A jury could infer that Romero's actions were intended to keep the police from knowing that his co-conspirator had just set off the motion detector by entering a window, which Romero had promised to leave unlocked, in order to remove a DVR and incriminating evidence that it contained about the stolen laptops in the warehouses. Further, Romero intentionally omitted the facts that he knew co-conspirators, that he had returned a pallet jack for one of his co-conspirators, or that Romero had been at the warehouses over the weekend at issue. Romero further concealed the fact that a co-conspirator requested he contact his brother and remove the DVR from his warehouse to destroy any incriminating evidence. Romero's argument that obstruction does not cover omissions, is refuted by the statutory definition of "misleading conduct," which specifically includes omissions and concealment. 18

6

U.S.C. § 1515(a)(3)(B).  Based on the evidence that Romero knowingly made false statements and intentionally omitted and concealed other information, the jury could reasonably conclude that Romero engaged in "misleading conduct" as required for conviction under 18 U.S.C. § 1512(b)(3).

*Minor-role reduction*

Romero further argues that the district court erred in denying his request for a two-level reduction in the base offense level for being a minor participant in the offense, pursuant to U.S.S.G. § 3B1.2(b),[3] because his supposed participation in the conspiracy did nothing to further the criminal enterprise.  Although Romero argues that he was a "comparative outsider to the scheme," he fails to demonstrate clear error in the district court's factual finding that his role "was key and pivotal to the success of this conspiracy."  *See United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc) (determination of a defendant's role in an offense constitutes a factual finding to be reviewed only for clear error).  Romero played a unique role in the conspiracy by tipping off co-conspirators, and making it possible for them to destroy evidence.  Romero also facilitated the removal of the DVR from a warehouse, and provided the co-conspirators with inside information about the criminal investigation.  Because it is not clear that Romero "played a relatively minor role" in the conduct for which he was held accountable, we affirm.  *See id.*

---

[3]  Section 3B1.2 authorizes a district court to reduce a defendant's offense by two levels if the defendant was a "minor participant" in the criminal activity.  U.S.S.G. § 3B1.2(b).

at 944 (stating "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense.").

*Abuse of Trust*

Finally, Romero asserts that the district court erred in overruling his objection to the two-level enhancement for abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3,[4] because his contribution to the crimes was insignificant.   The district court did not err in applying the abuse of trust enhancement. *See   United States v. Terry*, 60 F.3d 1541, 1545 ("The district court's finding that [the defendant] abused a position of public trust in a manner that significantly facilitated his ability to commit or conceal the offense is reviewed under a clearly erroneous standard," but "whether the defendant's conduct justifies the 'abuse of trust' enhancement is a question of law reviewed de novo."). In *Terry*, the Government presented evidence that a deputy sheriff used his office and patrol car to prevent police interception of his co-conspirator's drug sales to an undercover agent.   This Court held that "by being at the scene in his patrol car and by monitoring . . . police traffic [to] ensure that no other officers interrupted the

---

[4]   Section 3B1.3 provides for a two-level increase where "the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.

transaction," the deputy sheriff "facilitated both the commission and concealment of the crime." *Id.*

In light of the court's finding, with regard to Romero's request for a minor-role reduction, that Romero played a "key and pivotal" role in the conspiracy, this argument has no traction. Like the defendant in *Terry*, Romero used his position as a police officer to help conceal a crime. Nothing in *Terry*, suggests that concealment alone renders the enhancement inapplicable. Romero's conduct warranted the abuse of trust enhancement.

*Conclusion*

Viewed in the light most favorable to the Government, there was sufficient evidence at trial to support the jury's verdicts against Romero as to each count. Moreover, the district court did not clearly err in denying Romero a minor role reduction or in imposing an abuse of trust enhancement.

**AFFIRMED.**