**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12042

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANDREA MITCHELL,
LESTER BEST,

*Defendants-Appellants.*

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00407-SDM-UAM-2

————————————————

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Andrea Mitchell appeals her conviction for aggravated identity theft, and Lester Best appeals his convictions and sentences for

conspiracy to commit wire fraud and wire fraud. First, Mitchell argues that the district court erred in denying her motion for a judgment of acquittal because there was insufficient evidence for a jury to find that her use of S.G.'s and R.B.'s identification numbers constituted aggravated identity theft. Second, Best argues that the evidence presented at trial failed to demonstrate that he knowingly and willfully participated in the fraudulent refund check scheme. Third, Best also argues that the district court clearly erred in applying the four-level U.S.S.G. § 3B1.1(a) sentencing enhancement by finding that he was an organizer or leader in the refund check scheme.

## I. DISCUSSION

### A. Sufficiency of the Evidence--Mitchell

The court may enter a judgment of acquittal at the close of the government's evidence or at the close of all evidence, either upon the defendant's motion or *sua sponte*, if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). We review a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal *de novo*. *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015). We will uphold the district court's denial of a motion for judgment of acquittal if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). We view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the government. *United States v. Clay*, 832 F.3d 1259,

1293 (11th Cir. 2016). We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* at 1294. The evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc). Thus, the jury is free to choose among alternative, reasonable interpretations of the evidence. *Id.* We have held that, when a defendant testifies on her own behalf, she risks the jury concluding the opposite of her testimony is true. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). Statements made by a defendant may also be considered as substantive evidence of her guilt if the jury disbelieves it. *Id.*

The criminal statute for aggravated identity theft states, "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). Wire fraud is an enumerated felony under subsection (c). *Id.* § 1028A(c)(5). "A defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." *Dubin v. United States*, 599 U.S. 110, 131 (2023). In *Dubin*, the Supreme Court reversed the defendant's aggravated theft conviction, concluding that the defendant's "fraud was in misrepresenting *how* and *when*

services were provided to a patient, not *who* received the services." *Id.* at 132 (emphasis in original).

We applied the Supreme Court's interpretation of the aggravated identity theft statute in *United States v. Gladden*, in which we considered the challenges of two defendants, Jessica Linton and John Gladden. 78 F.4th 1232, 1242 (11th Cir. 2023). The defendants were employees of a compounding pharmacy that engaged in a scheme to bill insurance companies for medically unnecessary, fraudulent prescriptions. *Id.* at 1238. We affirmed Linton's conviction for aggravated identity theft on plain-error review under *Dubin*, noting that she changed certain customers' addresses on file to continue refilling their prescriptions under their names and altered a prescription to include medically unnecessary drugs without the prescribing doctor's knowledge. *Id.* at 1244-46. We concluded that Linton's conduct fell "squarely within the classic variety of identity theft left untouched by *Dubin*," explaining that she did not "merely misrepresent[] how the service was performed to inflate the bill," but rather, she "used the means of identification of former patients and prescribing doctors to overbill for certain products." *Id.* at 1246. In contrast, we vacated Gladden's conviction for aggravated identity theft based on a medically unnecessary prescription that one of Gladden's staff, Whitten, had obtained for her minor daughter. *Id.* at 1248. We found that the "deception at the heart of Whitten and Gladden's conduct" was obtaining unnecessary prescriptions and they did not misrepresent who received the prescription, making the daughter's information ancillary to the scheme. *Id.*

Here, the district court did not err in denying Mitchell's motion for a judgment of acquittal because a jury could conclude beyond a reasonable doubt that, when viewing the evidence in the light most favorable to the government, Mitchell used S.G.'s and R.B.'s student ID numbers without their authorization to generate fraudulent refund checks and then manually changed the payee names to individuals who were not entitled to the money. *Holmes*, 814 F.3d at 1250; *Clay*, 832 F.3d at 1293. Although Mitchell testified that she did not need to enter student ID numbers to generate the checks and that it was a coincidence that the individuals who received checks associated with S.G.'s and R.B.'s student ID numbers had the same last names as they did, the jury was free to believe the opposite, choosing to credit Menendez's and Pendharkar's testimony instead, and use her statements as substantive evidence of guilt. *Brown*, 53 F.3d at 314; *Cruz-Valdez*, 773 F.2d at 1545. Finally, Mitchell's conduct is more like Linton's than Gladden's because Gladden did not misrepresent the recipient of the unnecessary prescription, whereas both Linton and Mitchell used Personally Identifiable Information ("PII") without those individuals' knowledge and authorization to generate fraudulent items. *Gladden*, 78 F.4th at 1244-46, 1248. Specifically, in Mitchell's case, she used the PII of S.G. and R.B. to create fake credit balances and then to generate fraudulent refund checks. She then changed the payee names and addresses to individuals with similar names who were not entitled to refunds. In other words, Mitchell's fraudulent use of the identities of S.G. and R.B. was at the crux of what made her conduct

criminal.  Thus, the evidence sufficiently supports Mitchell's conviction for aggravated identity theft.  Accordingly, we affirm as to this issue.

*B. Sufficiency of the Evidence--Best*

When a defendant moves for a judgment of acquittal at the close of the government's case-in-chief, their presentation of a case after the denial of that motion generally operates as a waiver of any objection to the decision on the motion unless they renew their motion at the close of all evidence.  *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994).  Accordingly, in such a scenario, we review for a manifest miscarriage of justice only.  *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012).

The manifest miscarriage of justice "standard requires a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking."  *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006) (quotation marks omitted).  When making that determination, we "must view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict."  *House*, 684 F.3d at 1196 (quotation marks omitted).  We make "no distinction . . . between the weight given to either direct or circumstantial evidence," but "[w]here the [G]overnment relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict."  *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) (quotation marks omitted) (alterations in original).

24-12042                Opinion of the Court                7

A conviction for wire fraud under 18 U.S.C. § 1343 requires that the government prove beyond a reasonable doubt that the defendant (1) participated in a scheme or artifice to defraud, (2) did so with intent to defraud, and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud. *United States v. Machado*, 886 F.3d 1070, 1082–83 (11th Cir. 2018). "To gauge a defendant's intent to commit a fraudulent scheme," one "must determine whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled." *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011). An intent to defraud for purposes of mail and wire fraud may be inferred from the defendant's conduct. *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009). "Evidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011).

To establish conspiracy under 18 U.S.C. § 1349, the government must prove beyond a reasonable doubt "(1) that a conspiracy existed; (2) that the defendant knew of it; and (3) that the defendant, with knowledge, voluntarily joined it." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (quotation marks omitted). "Because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Watkins*, 42 F.4th 1278, 1285 (11th Cir. 2022) (quotation marks omitted). The government need not prove that the defendant knew all of the details or participated in every aspect of the conspiracy. *United States v.*

*Garcia*, 405 F.3d at 1260, 1270 (11th Cir. 2005).  "Rather, the government must only prove that the defendants knew the essential nature of the conspiracy."  *Id.* (quotation marks omitted).

As a preliminary matter, Best failed to properly preserve his motion for a judgment of acquittal because, after the court denied both his and Mitchell's motions after the government's and Mitchell's case-in-chief, Best presented testimony from multiple witnesses and did not renew his motion at the close of all evidence. Thus, Best did not preserve his motion for a judgment of acquittal, and we review the evidence supporting his conviction for a manifest miscarriage of justice.

Here, the district court's denial of Best's motion did not result in a manifest miscarriage of justice because the government presented ample evidence for a jury to conclude beyond a reasonable doubt that he had knowingly and willingly participated in the fraudulent check scheme and that he intended to enter into a conspiracy with Mitchell to execute the scheme.  First, Best argues that Mitchell used him as a "pawn" and misled him to believe that the check scheme was legitimate.  However, Best's longtime friend and co-conspirator Sylvester Robinson testified that Best told him he knew someone who had access to an HCC account that "had not been through or detected, audited," and when Robinson inquired about the legality of receiving a check, Best reassured him that the scheme "had gone undetected up until this point."  Additionally, Gloria Gutierrez testified that Mitchell and Best instructed her to lie and claim she was an Hillsborough Community College

("HCC") student if law enforcement ever confronted her about the checks. Best also provided inconsistent explanations for the checks' origins, informing one friend that it was legitimate grant money, but telling another it was financial aid he was owed by HCC.

This testimony strongly suggests that Best understood the illicit nature of the check scheme and rather than being an unwitting participant, he actively collaborated with Mitchell to recruit more people for the conspiracy and provided recruits conflicting explanations to conceal the conspiracy's nature. Furthermore, although Best argues that Mitchell's testimony shows how she took advantage of his difficulties with reading and writing to involve him in the scheme, the jury was free to discredit Mitchell's testimony. Further, the testimony from co-conspirators discussed above demonstrates that Best's learning disabilities did not appear to impact his ability to understand the underlying illegal nature of the scheme, or to recruit friends and family to participate in it. *Brown*, 53 F.3d at 314. In conclusion, the evidence presented at trial establishing Best's engagement in wire fraud and conspiracy to commit wire fraud was not so tenuous as to be shocking, and therefore the denial of his motion for a judgment of acquittal did not result in a manifest miscarriage of justice. Accordingly, we affirm as to this issue.

*C. Sentencing--Best*

We review a district court's finding regarding a defendant's role in the offense under § 3B1.1 for clear error. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005). Under this standard,

we cannot reverse unless left with a definite and firm conviction that a mistake has been committed. *United States v. Poirier*, 321 F.3d 1024, 1035 (11th Cir. 2003).

Section 3B1.1 prescribes a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The government bears the burden of proving that the defendant was an organizer or leader and the criminal activity involved five or more participants. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). We examine whether a defendant qualifies for the four-level leader or organizer enhancement, by considering the following factors stated in the commentary:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018) (quoted source omitted); *see also* U.S.S.G. § 3B1.1, comment (n.4).

There is no requirement that all the factors be present, and there may be more than one conspirator who qualifies as a leader. *United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir. 2018). Additionally, "these factors are merely considerations for the sentencing

judge." *Ramirez*, 426 F.3d at 1356. "In many of the cases where we have affirmed a finding that a defendant played a leadership or organizational role under U.S.S.G. § 3B1.1(a), there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority." *United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010). Indeed, § 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership; the mere status of a middleman or a distributor does not support an enhancement. *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (reversing the district court's application of the § 3B1.1(a) enhancement because the government had presented no evidence that the defendant "was an organizer or leader" and the evidence indicated at most "a continuing seller/buyer relationship" between the defendant and the head of a drug ring).

Here, the district court did not clearly err in imposing the § 3B1.1(a) enhancement because the conspiracy involved five or more participants and the evidence presented at trial showed Best recruited at least seven co-conspirators into the scheme, directed their activities by delivering checks to them, personally escorting them to cash the checks, and then deciding how much of the money to pay them as a fee. Further, he claimed a large portion of the scheme's fraudulent proceeds for himself. Accordingly, we affirm.

**AFFIRMED.**