*Friend v. Gasparino*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 20-3644

**MICHAEL FRIEND,**
*Plaintiff-Appellant,*

v.

**RICHARD GASPARINO AND CITY OF STAMFORD,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the District of Connecticut

---

ARGUED: DECEMBER 10, 2021
DECIDED: FEBRUARY 27, 2023

---

Before:     LYNCH, SULLIVAN, and MENASHI, *Circuit Judges.*

Plaintiff-Appellant Michael Friend appeals the judgment of the district court granting the motions for summary judgment of Defendants-Appellees Sergeant Richard Gasparino and the City of Stamford. In 2018, Friend responded to a Stamford Police Department distracted-driving enforcement operation by standing on a sidewalk a few blocks south of the police units displaying a sign that read

"Cops Ahead." The police confiscated his signs, and Friend was arrested, charged, and briefly detained. Friend pursued five claims against Gasparino and the City for violations of his First, Fourth, and Fourteenth Amendment rights. We **VACATE** in part, **AFFIRM** in part, and **REMAND** the case for further proceedings consistent with this opinion.

———————

DAN BARRETT (Elana Bildner, *on the brief*), ACLU Foundation of Connecticut, Hartford, CT, *for Plaintiff-Appellant Michael Friend*.

ELLIOT B. SPECTOR (David C. Yale, *on the brief*), Hassett & George, PC, Simsbury, CT, *for Defendant-Appellee Richard Gasparino*.

BARBARA L. COUGHLAN, Assistant Corporation Counsel, City of Stamford, Stamford, CT, *for Defendant-Appellee City of Stamford*.

———————

MENASHI, *Circuit Judge*:

On April 12, 2018, Plaintiff-Appellant Michael Friend responded to a distracted-driving enforcement operation conducted by Defendant-Appellant Sergeant Richard Gasparino and the Stamford Police Department. Friend stood down the street from where the police were stationed and displayed a sign reading "Cops Ahead." Gasparino twice confiscated Friend's signs and ultimately arrested him for interfering with an officer under Connecticut General Statutes § 53a-167a(a). Friend sued Gasparino and the City of Stamford. Friend argued that Gasparino violated the First Amendment when he confiscated Friend's signs and violated the

2

Fourth Amendment when he pursued a malicious prosecution of Friend. Friend further argued that the City was liable for Gasparino's decision to set Friend's bail at $25,000, a decision that Friend asserted violated his rights to due process and equal protection under the Fourteenth Amendment.

The district court granted summary judgment to Gasparino and the City, and Friend appealed. We vacate the judgment of the district court with respect to Friend's First and Fourth Amendment claims against Gasparino (Counts One, Two, and Three), affirm the judgment with respect to Friend's Fourteenth Amendment claims against the City (Counts Four and Five), and remand the case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

This case involves the arrest of Friend for his expressive conduct relating to police activity in Stamford, Connecticut. After telling Friend to move and twice confiscating Friend's signs, Gasparino arrested Friend on a charge of misdemeanor interference with an officer, Conn. Gen. Stat. § 53a-167a, and detained him on $25,000 bail. Friend's bail was adjusted early the next morning, and he was released on his own recognizance pending a hearing. At the hearing, state prosecutors dropped the charge. Friend later brought this action against Gasparino and the City.

## I

On April 12, 2018, the Stamford Police Department conducted a distracted-driving enforcement operation near the intersection of Hope and Greenway Streets in Stamford. The officers ticketed drivers for violations of Connecticut General Statutes § 14-296aa(b), which prohibits "using a hand-held mobile telephone" or "mobile electronic

device" to "call" or "text" while driving. The operation was "intended to enforce the law prohibiting the use of cell phones while driving to reduce motor vehicle collisions." J. App'x 352. Gasparino acted as a "spotter," alerting officers farther down the street of drivers he believed were operating vehicles while using cell phones. *Id.* at 336.

Friend saw the police presence and, at approximately 4:00 p.m. that afternoon, sought to express his "object[ion] to the manner in which police were conducting the operation" by displaying a sign. *Friend v. City of New Haven Police Dep't*, 490 F. Supp. 3d 492, 496 (D. Conn. 2020) (internal quotation marks omitted). Friend wrote "Cops Ahead" on the sign and displayed it while standing on a public sidewalk approximately two blocks south of the operation, near the intersection of Hope and Cushing Streets. Friend alleges that Gasparino approached him and advised him to "leave the spot where he was standing." *Id.* Gasparino told Friend that he was "interfering with our police investigation," took Friend's sign, and instructed Friend not to return with a sign or else he would be arrested. *Id.*

Friend then walked one block further south and displayed a second sign, which also read "Cops Ahead," near the corner of Hope and Fahey Streets. He again stood on the public sidewalk and displayed the sign to passing cars. After about thirty minutes, Gasparino again approached and this time "arrested Friend for 'interfering' with the distracted driving investigation." *Id.* Gasparino charged Friend with misdemeanor interference with an officer in violation of Connecticut General Statutes § 53a-167a(a).

Friend was transported to Stamford police headquarters, where he was booked on the misdemeanor charge. Gasparino also confiscated Friend's two cell phones. Although Friend was charged

4

with a misdemeanor, had no criminal record, and was a longtime resident of Stamford, Gasparino set Friend's bail at $25,000. Gasparino testified that in setting the bail amount he considered Friend's "actions on scene" and "his personality." *Id.* Friend did not post bail, and he was held at the police station. At approximately 1:30 a.m. the following day, a bail commissioner reassessed Friend's bail to zero dollars and a promise to appear in court. Friend was released at approximately 2:00 a.m.[1]

At Friend's hearing, the state's attorney entered a *nolle prosequi* and stated to the court that Friend had in fact "helped the police." J. App'x 318. The prosecutor explained that "Friend actually was helping the police do a better job than they anticipated because when [drivers] saw the signs, they got off their cell phones." *Id.* The misdemeanor interference charge was dismissed.

**II**

On October 22, 2018, Friend sued Gasparino under 42 U.S.C. § 1983 in federal district court. On August 13, 2019, he filed an amended complaint in which he added the City as a defendant. Friend alleged that Gasparino violated his First Amendment right to freedom of speech and his Fourth Amendment right against malicious prosecution. Friend also asserted claims against the City for violations of his Fourteenth Amendment rights to due process and equal protection. After discovery, all parties moved for summary judgment.

---

[1] As a result of his confinement, Friend missed work at one of his jobs delivering food. Because his work cell phone was confiscated, Friend purchased a replacement phone.

The district court granted Gasparino's and the City's motions for summary judgment. Addressing Friend's First Amendment claims, the district court said that "it is questionable whether Friend's act of holding a 'Cops Ahead' sign a few blocks from the location in which officers were stopping distracted drivers[] rises to the level of expression of an opinion related to a matter of public significance." *Friend*, 490 F. Supp. 3d at 500. According to the district court, "[h]is signs did not discuss a topic or express his opinion on it" and therefore Friend's speech was of "little, if any, public concern." *Id.* The district court further held that, even assuming Friend's speech was entitled to First Amendment protection, Gasparino's conduct "pass[ed] strict scrutiny" because the "compelling" governmental interest at stake involved "saving lives by stopping distracted drivers and issuing citations for their behavior." *Id.* at 500-01. That interest could be achieved "only … without Friend's interference" such that there "was no less restrictive alternative" than confiscating his signs and removing him from the scene. *Id.* at 501 (internal quotation marks omitted). "Had Friend wished to complain about particular police procedures or in general about the police," the district court added, "he was free to do so elsewhere." *Id.*

The district court rejected Friend's Fourth Amendment claim for malicious prosecution. The district court concluded that "Gasparino had probable cause to arrest Friend" because "Gasparino warned [Friend] not to return with another sign or he would be arrested" and that "is precisely what Friend did." *Id.* at 503. According to the district court, Friend "was not arrested for verbal conduct, but rather for his physical conduct in returning to the scene, in direct contravention of Gasparino's instructions." *Id.*

Finally, the district court dismissed Friend's due process and equal protection claims against the City. The district court concluded that, because "Friend has failed to state facts establishing that Gasparino was a policymaker" who had such "substantial authority" to set the City's bail policy, the municipality could not be held liable for his conduct under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *Friend*, 490 F. Supp. 3d at 505-06. The district court said that there was "insufficient evidence that in setting bail at $25,000, and holding Friend for several hours, the [C]ity of Stamford violated Friend's constitutional rights 'pursuant to a governmental policy or custom' that was 'sufficiently persistent or widespread as to acquire the force of law.'" *Id.* at 506 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 190, 192 (2d Cir. 2007)).

Friend timely appealed.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). "Summary judgment is warranted only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In deciding whether such a showing has been made we "resolve all ambiguities and draw all permissible inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). Only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"

is summary judgment appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

We hold that the district court erred in evaluating Friend's § 1983 claims for violation of the First Amendment (Counts One and Two) and for malicious prosecution in violation of the Fourth Amendment (Count Three). We vacate the district court's judgment granting summary judgment to Gasparino on those claims. We affirm the judgment insofar as the district court granted summary judgment to the City on Friend's § 1983 claims for violation of the Fourteenth Amendment (Counts Four and Five). We remand to the district court for further proceedings consistent with this opinion.

## I

We first address Friend's claim against Gasparino for violating his Fourth Amendment right to be free of malicious prosecution. Because it held that Gasparino had probable cause to arrest Friend, the district court granted summary judgment to Gasparino. *Friend*, 490 F. Supp. 3d at 503. We vacate this aspect of the district court's judgment because neither Connecticut General Statutes § 53a-167a nor any other provision of Connecticut law proscribed Friend's actions and therefore Gasparino lacked probable cause to arrest Friend.

"To state a § 1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Cornelio v. Connecticut*, 32 F.4th 160, 178 (2d Cir. 2022) (internal quotation marks omitted). Under Connecticut law, "a malicious prosecution claim requires proof that (1) the defendant initiated or

procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Id.* (internal quotation marks omitted). "Because lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) (internal quotation marks omitted).

"The probable cause standard under Connecticut law and federal law are substantively identical, requiring a showing that officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Washington v. Detective*, 29 F.4th 93, 104-05 (2d Cir. 2022) (internal quotation marks omitted). As Gasparino recognizes, "the[] undisputed intentional acts which served as the basis for probable cause" consisted of "returning and displaying another sign in contravention of [Gasparino's] order[,] which constituted an intent to again interfere with the distracted driver enforcement." Gasparino Br. 16. Gasparino does not suggest that there was probable cause to believe Friend "committed any other offense other than interfering with a police officer" under § 53a-167a(a). J. App'x 170 (deposition of Gasparino); *see also Friend*, 490 F. Supp. 3d at 503.

We hold that there was no probable cause to arrest Friend because § 53a-167a(a) did not prohibit Friend's actions and § 53a-167a(a) was the only basis that has been suggested for believing that Friend was committing any crime. Section 53a-167a(a) provides

that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer … in the performance of such peace officer's … duties." Conn. Gen. Stat. § 53a-167a(a). The Connecticut Supreme Court has expressly "construe[d] § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *State v. Williams*, 534 A.2d 230, 239 (Conn. 1987) (internal quotation marks omitted). Thus, the Connecticut Supreme Court has "exclude[d]" from the scope of § 53a-167a "situations in which a defendant merely questions a police officer's authority or protests his or her action." *Id.* at 238. Connecticut courts have accordingly held that the statute does not prohibit even text messages directing the subject of an investigation not to cooperate with police or alerting the subject about police activity.[2]

---

[2] In *State v. Sabato*, the Connecticut Supreme Court affirmed the reversal of a defendant's conviction under § 53a-167a for having texted a witness "telling him not to write a statement" for the police "and to keep his mouth shut." 138 A.3d 895, 900 (Conn. 2016) (internal quotation marks and alteration omitted). The Connecticut Supreme Court explained that because "§ 53a-167a does not proscribe such verbal conduct, … the defendant's conviction under that statute cannot stand." *Id.* at 905. In *State v. Lamantia*, a defendant successfully appealed her conviction under § 53a-167a for texting a witness that the "cops are coming," "that he should delete this text conversation," and that the witness should make various false statements to the police so that their stories "match[ed]." 187 A.3d 513, 519 (Conn. App. Ct. 2018). The Connecticut Appellate Court said that because "our Supreme Court expressly limited [the statute's] application to intentional interference consisting of either physical conduct or fighting words that inflicted injury or tended to incite an immediate breach of the peace," *id.* at 522, "there was insufficient evidence to sustain [the] conviction for interfering with a police officer" based on "text messages … which cannot be construed as fighting words," *id.* at 523.

Courts in this circuit have also held that there is no probable cause to arrest a defendant for speech under § 53a-167a. In *Darbisi v. Town of Monroe*, we affirmed the district court's denial of summary judgment to a police officer who had effected such an arrest. 53 F. App'x 159, 159 (2d Cir. 2002). In that case, the plaintiff sued for false arrest, malicious prosecution, and unlawful retaliation after the officer arrested the plaintiff for allegedly lying to him. *Id.* The district court held that the officer was "not entitled to qualified immunity" because § 53a-167a(a) "as interpreted by the Connecticut Supreme Court in *State v. Williams* clearly does not permit a criminal action for lying to a police officer," so the officer "did not have arguable probable cause to make the arrest." *Id.* (citation omitted). We "affirm[ed] the judgment of the District Court with respect to qualified immunity substantially for the reasons stated in its opinion." *Id.* In that opinion, the district court explained that the "unequivocal statement" of the Connecticut Supreme Court "concerning the scope of the statute leaves no room for an interpretation that would permit an arrest for verbal interference involving something other than fighting words." *Darbisi v. Town of Monroe,* No. 00-CV-01446, 2002 WL 32348250, at *2 (D. Conn. Jan. 11, 2002).

District courts have recognized as "well-settled" the "basic proposition that only physical conduct and fighting words give rise to a viable charge of interfering with an officer" under § 53a-167a. *Torlai v. LaChance*, No. 14-CV-185, 2015 WL 9047785, at *7 (D. Conn. Dec. 15, 2015). For that reason, neither a defendant's "refusal to answer questions" nor "his failure to disclose that the address listed on his driver's license was incorrect" provides police officers with probable cause to arrest him for interference with an officer. *Id.* at *8;

11

*see also Berg v. Sorbo*, No. 12-CV-228, 2014 WL 1117643, at \*8 (D. Conn. Mar. 19, 2014) (denying a police officer's motion for summary judgment on the plaintiff's false arrest and malicious prosecution claims because there were issues of material fact calling into question arguable probable cause to arrest the plaintiff under § 53a-167a).

Gasparino argues that Friend violated § 53a-167a by refusing to comply with Gasparino's directive to leave the area and not to return with another sign. We do not believe that Gasparino's directive could create probable cause where there was none before. Gasparino still cannot identify a crime that he would have had probable cause to suspect was occurring. As we have explained, § 53a-167a proscribes only "physical conduct" and "fighting words." *Williams*, 534 A.2d at 239. Friend's refusal to end his protest was neither. To be sure, the Connecticut Supreme Court has said that § 53a-167a covers the refusal to comply with "lawful police commands or orders." *State v. Aloi*, 911 A.2d 1086, 1097 n.22 (Conn. 2007). But Gasparino's directive was not such a command or order because Friend was violating no law by standing on the sidewalk and displaying his sign, and Garparino had no lawful reason to order him to desist from that conduct. *Cf. Gregory v. City of Chicago*, 394 U.S. 111, 120 (1969) (Black, J., concurring) ("To let a policeman's command become equivalent to a criminal statute comes dangerously near making our government one of men rather than of laws.").[3]

---

[3] The district court's suggestion that Friend was arrested for his "physical conduct in returning to the scene" rather than for his speech is unpersuasive. *Friend*, 490 F. Supp. 3d at 503. Gasparino did not tell Friend that he could not stand on the sidewalk in a particular spot but that he could not return "with another sign." *Id.* at 496. Gasparino objected not simply to Friend's presence but to the message conveyed by his sign.

Because the existence of probable cause is a complete defense to a malicious prosecution claim, the district court did not consider the other elements of that claim. We hold that Friend's arrest was unsupported by probable cause and vacate the district court's grant of summary judgment on Count Three. We remand for the district court to consider whether the other elements of Friend's malicious prosecution claim are met and whether Gasparino has a defense of qualified immunity.

## II

We next address Counts One and Two—which allege that Gasparino violated Friend's First Amendment rights. The district court granted summary judgment to Gasparino on these counts for two reasons. First, the district court suggested that Friend's speech was not eligible for protection under the First Amendment. Second, the district held that, even if Friend's speech were constitutionally protected, there was no dispute of material fact as to whether Gasparino's actions in confiscating Friend's signs and arresting him satisfied strict scrutiny. The district court erred in both conclusions.

## A

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech," U.S. Const. amend. I, and this prohibition also applies to state governments, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). "As a general matter, 'the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983)). "[T]his principle, like other First Amendment principles, is not absolute." *Id*. The First

13

Amendment has historically "permitted restrictions upon the content of speech in a few limited areas." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382-83 (1992)). "These historic and traditional categories long familiar to the bar" include "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct"—"well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any [c]onstitutional problem." *Id.* at 468-69 (internal quotation marks and citations omitted). While there may "exist 'some categories of speech that have been historically unprotected but have not yet been specifically identified or discussed in our case law,'" the "First Amendment stands against any 'freewheeling authority to declare new categories of speech outside the scope of the First Amendment.'" *United States v. Alvarez*, 567 U.S. 709, 722 (2012) (alterations omitted) (quoting *Stevens*, 559 U.S. at 473).

The speech in this case does not fall into any of these traditional categories of unprotected speech and the district court was not entitled to create a new "First Amendment Free Zone" that left it unprotected. *Stevens*, 559 U.S. at 469 (quoting *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987)). The district court said that speech must "rise[] to the level of expression of an opinion related to a matter of public significance" in order to receive First Amendment protection. *Friend*, 490 F. Supp. 3d at 500. But that is not correct. The First Amendment does not "permit the Government to imprison any speaker so long as his speech is deemed valueless or unnecessary." *Stevens*, 559 U.S. at 471. The First Amendment "reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs," and the Constitution "forecloses

14

any attempt to revise that judgment simply on the basis that some speech is not worth it." *Id.* at 470.

The district court's suggestion that only "expression[s] of an opinion related to a matter of public significance" merit First Amendment protection is unsupported in our case law. *Friend*, 490 F. Supp. 3d at 500. To be sure, there are circumstances in which it matters whether speech addresses a matter of public concern. For example, a public employee receives First Amendment protection from retaliation based on speech if he "spoke as a private citizen and the speech at issue addressed a matter of public concern." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 95 (2d Cir. 2020) (alteration omitted) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 393 (2d Cir. 2018)). And a defendant in a defamation or other tort action receives First Amendment protection from liability when his "statements were on matters of public concern." *Snyder v. Phelps*, 562 U.S. 443, 451 (2011).

Yet Friend is neither a public employee alleging retaliation by his employer nor a defamation defendant seeking protection from tort liability. He is a private citizen who was speaking on a public sidewalk when the police confiscated his signs and arrested him. He does not need to establish that his speech addressed "a matter of public significance" in order to receive the protection of the First Amendment. *Cf. Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) ("In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed."). "The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits." *Stevens*, 559 U.S. at 470.

15

As it turns out, Friend *was* speaking on a matter of public concern. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). The district court observed that "[a]lthough Friend states that he 'objected to the way police were issuing tickets,' no where does Friend state how such issuance was unlawful or improper." *Friend*, 490 F. Supp. 3d at 500 (alteration omitted). But a citizen does not need to show that a police practice is unlawful—or that it deviates from some notion of propriety—in order to object to it.

Nor did Friend need to express his objection in a conventional way. As the Supreme Court has said, "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995). Friend was not required to make a public policy argument in support of his objection; even a "crude form of protest" expressing visceral disdain for government actions qualifies for First Amendment protection. *Cohen v. California*, 403 U.S. 15, 21 (1971). Indeed, even if Friend had not objected to the government's conduct at all, simply reporting on the government's activities would qualify for First Amendment protection. A newspaper's front page is as protected against government censorship as the editorial page. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971).

Friend's speech would have lacked First Amendment protection if it were "integral to criminal conduct," a category of speech that historically may be restricted. *Stevens*, 559 U.S. at 468. The "constitutional freedom for speech and press" does not "extend[] its immunity to speech or writing used as an integral part of conduct in

16

violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). Thus, "the First Amendment is quite irrelevant if the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) (Kennedy, J.). "In those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *Id.*[4] Thus, in some cases, speech that helps another person engaged in criminal activity evade detection by law enforcement may be subject to criminal penalties. *See, e.g., United States v. Cassiliano*, 137 F.3d 742, 744, 747 (2d Cir. 1998) (affirming an obstruction-of-justice sentencing enhancement because the defendant contacted a "principal target[] of the government's investigation[]" to "alert[]" him "to the investigation and discuss[] whether they would lie to" investigators); *United States v. Arzola*, 528 F. App'x 487, 491, 498-500 (6th Cir. 2013) (affirming an enhancement because a defendant alerted a co-conspirator before law enforcement executed a search warrant).[5]

---

[4] For example, constitutional protection does not extend to solicitation of child pornography, *United States v. Williams*, 553 U.S. 285, 299 (2008), extortionate threats, *Virginia v. Black*, 538 U.S. 343, 362-63 (2003), or advice to foreign terrorist organizations, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 39 (2010).

[5] There are also certain circumstances in which the state may impose criminal liability for the disclosure of sensitive law enforcement information even if the defendant was not a co-conspirator to an underlying crime. *See, e.g., United States v. Aguilar*, 515 U.S. 593, 605 (1995) (rejecting a First Amendment challenge to a criminal statute that restricts individuals

Friend's speech does not fall within this category. Friend was not acting in coordination with lawbreakers such that he could be said to have been engaged in a conspiracy to commit violations and evade detection. *See, e.g.*, *United States v. Murphy*, 957 F.2d 550, 551, 554 (8th Cir. 1992) (affirming a conviction for conspiracy to defraud the United States in which the defendant had a "longstanding tacit agreement" to provide "information" that a co-conspirator "used … to avoid detection"); *United States v. Romero*, 518 F. App'x 648, 651 (11th Cir. 2013) (affirming a conviction for conspiracy to receive and possess stolen goods and commit cargo theft based in part on evidence that the defendant "tipped off his co-conspirators to a possible raid" by law enforcement, which "allow[ed] a co-conspirator to remove evidence" and "furthered the crime by helping to protect the other participants from apprehension by the police").

Gasparino cannot identify a crime that Friend committed, let alone a crime to which Friend's speech was "integral." The only offense with which Friend was charged—and for which Gasparino arrested Friend—was interference with a police officer under § 53a-167a. But, as explained above, Friend's conduct did not violate

from "disclos[ing] wiretap information 'in order to obstruct, impede, or prevent' the interception"); *Boehner v. McDermott*, 484 F.3d 573, 579 (D.C. Cir. 2007) ("*Aguilar* stands for the principle that those who accept positions of trust involving a duty not to disclose information they lawfully acquire while performing their responsibilities have no First Amendment right to disclose that information."). Here, however, there is no argument that Friend violated such a duty or statute. Aiding-and-abetting statutes also may impose criminal liability on one who aids in the commission of a crime or "counsels, commands, induces or procures" its commission, which might be accomplished through words, 18 U.S.C. § 2(a), though that also does not match Friend's conduct here. *See infra* note 6.

that statute. The Connecticut Supreme Court has long construed the statute "to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Williams*, 534 A.2d at 239 (internal quotation marks omitted). That court has explained that "§ 53a-167a does not proscribe" even a "text message exchange" in which the defendant told a witness at a police station "to keep his mouth shut." *Sabato*, 138 A.3d at 900, 905 (alteration omitted). This construction of the statute "preserves the statute's purpose to proscribe 'core criminal conduct' that is not constitutionally protected." *Williams*, 534 A.2d at 239 (quoting *Hill*, 482 U.S. at 468). The U.S. Supreme Court has explained that someone who interferes with an officer "might constitutionally be punished under a tailored statute that prohibited individuals from physically obstructing an officer's investigation" but "may not be punished under a broad statute aimed at speech." *Hill*, 482 U.S. at 463 n.11. Friend did not physically obstruct the officers in this case, and he did not utter fighting words or otherwise cause a breach of the peace. Because there is no predicate crime that Friend even arguably committed, Gasparino cannot show that Friend's speech was unprotected for being "integral to criminal conduct." *Stevens*, 559 U.S. at 468.[6]

---

[6] Friend's conduct also did not constitute incitement or aiding and abetting. Friend's sign was not "directed to inciting or producing imminent lawless action" or "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Furthermore, § 53a-8 of the Connecticut Penal Code, which imposes criminal liability for aiding and abetting "an offense," does not extend to motor vehicle violations. Conn. Gen. Stat. § 53a-8; *see State v. Menditto*, 110 A.3d 410, 416 (Conn. 2015) ("[I]nfractions, like motor vehicle violations, do not constitute criminal offenses."). The Connecticut Motor

In short, there was no basis for suggesting that Friend's speech does not receive the protection of the First Amendment.

**B**

The mere fact that speech is protected by the First Amendment does not mean that it is always immune from regulation. But restricting such speech requires the government to satisfy a higher burden than the district court applied in this case.

"In traditional public fora, such as streets and parks, which have 'immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions,' the government can enact content-based restrictions on speech only if they are necessary to serve a compelling government interest." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (quoting *Perry*, 460 U.S. at 45). Here, Gasparino confiscated Friend's signs and then arrested him based on the content of his signs. Gasparino's actions must therefore satisfy strict scrutiny.

Strict scrutiny permits the government to restrict speech "only if [it] proves that [its restrictions] are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Narrow tailoring requires that the restriction on speech be "*necessary* to serve the asserted compelling interest, … precisely tailored to serve that interest, and … the least restrictive means readily available for that purpose." *Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005) (internal quotation marks, alteration, and

Vehicle Code does not include a complicity provision. *See* Conn. Gen. Stat. tit. 14.

20

citation omitted). This is a "strict test" because "regulations of speech based on its content 'are presumptively invalid.'" *Id.* at 149 (quoting *R.A.V.*, 505 U.S. at 382).

The district court concluded that, even assuming Friend's speech was protected by the First Amendment, Gasparino's actions satisfied strict scrutiny because those actions served a compelling state interest and were narrowly tailored to that interest. First, the district court held that "the police department's interest was in saving lives by stopping distracted drivers and issuing citations for their behavior" and that "this was a sufficiently compelling interest." *Friend*, 490 F. Supp. 3d at 500-01 (internal quotation marks omitted). Second, the district court determined that "the only way in which Gasparino could tailor punishment was to remove Friend and his signs from the adjacent area," that "[t]he operation could only effectively continue without Friend's interference," and that "there was no less restrictive alternative." *Id.* at 501 (internal quotation marks omitted). Both conclusions were erroneous.

While we agree that the state has "an unqualified interest in the preservation of human life," *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997) (internal quotation marks omitted), the district court erred by defining the interest as "saving lives by stopping distracted drivers and issuing citations for their behavior," *Friend*, 490 F. Supp. 3d at 500. In so defining the relevant interest, the district court did what the Supreme Court has expressly disallowed: it took "the *effect* of the [restriction] and posited that effect as the State's interest." *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991). In *Simon & Schuster*, the Supreme Court held unconstitutional a statute that "require[d] any entity contracting with an accused or convicted person for a depiction of the crime … to turn

21

over any income under that contract." *Id.* at 109. While the Supreme Court accepted that the state has "an undisputed compelling interest in ensuring that criminals do not profit from their crimes," it rejected the state's proffered interest of "ensuring that criminals do not profit from storytelling about their crimes before their victims have a meaningful opportunity to be compensated." *Id.* at 119. The state could not "explain why [it] should have any greater interest in compensating victims from the proceeds of such 'storytelling' than from any of the criminal's other assets," nor could it "offer any justification for a distinction between this expressive activity and any other activity in connection with its interest in transferring the fruits of crime from criminals to their victims." *Id.* at 119-20. Accordingly, the state had to show that its regulation was narrowly tailored to the "compelling interest in compensating victims from the fruits of the crime." *Id.* at 120. It was not allowed to define the interest as the specific means of providing such compensation from "the proceeds of the wrongdoer's speech about the crime." *Id.* at 120-21.

Like the state in *Simon & Schuster*, neither Gasparino nor the district court explain why Connecticut has a compelling interest not simply in saving lives, or even in the enforcement of distracted driving laws, but specifically in doing so by "issuing citations" to distracted drivers. *Friend*, 490 F. Supp. 3d at 500. As noted above, a content-based restriction on speech must be narrowly tailored to a compelling interest. The district court here, however, tailored the compelling interest to the restriction by defining the compelling interest in "saving lives" in terms of the specific means of serving that interest—issuing citations—that Friend's protest made more difficult to accomplish. Defining the compelling interest so narrowly "eliminates the entire inquiry concerning the validity of content-

based discriminations" because "[e]very content-based discrimination could be upheld by simply observing that the state is anxious to regulate the designated category of speech" through the means it has already chosen. *Simon & Schuster*, 502 U.S. at 120 (quoting *Simon & Schuster, Inc. v. Fischetti*, 916 F.2d 777, 785 (2d Cir. 1990) (Newman, J., dissenting)).

The compelling interest asserted in this case is properly defined as the state's interest in saving lives or perhaps in the enforcement of distracted driving laws. We do not question the seriousness of the state's interest in enforcing traffic laws, including laws regulating distracted driving. But we must ask whether Gasparino's arrest of Friend and confiscation of Friend's signs were narrowly tailored to advance those arguably compelling interests. As explained above, Connecticut has not enacted any law that proscribes conduct such as Friend's. *See supra* Part I. As a result, Gasparino cannot establish that his discretionary restriction of Friend's speech was "*necessary to serve*" Connecticut's interests in saving lives or in enforcing traffic laws. *Hobbs*, 397 F.3d at 149 (quoting *R.A.V.*, 505 U.S. at 395). Connecticut's legislature and state courts have concluded that restricting speech such as Friend's is not necessary to advance the state's interests, and yet Gasparino unilaterally decided to impose such a restriction. Gasparino identifies no exigency or emergency to justify his decision but argues instead that he could impose a speech restriction in his discretion based on arguments that the state itself has disclaimed. That cannot satisfy narrow tailoring.[7]

---

[7] We need not decide whether a state could under any conceivable set of circumstances prohibit actions such as Friend's or what sort of showing it

In sum, the confiscation of Friend's signs and his subsequent arrest violated Friend's right to freedom of speech. We vacate the district court's grant of summary judgment on Counts One and Two. We remand for the district court to consider Gasparino's defense of qualified immunity in the first instance.

## III

Friend brought his final claims against the City for adopting bail-setting policies that he argues violated his constitutional rights to due process and equal protection (Counts Four and Five). According to Friend, the City is liable because it acted as "the moving force of the constitutional violation" through municipal policy when Gasparino set Friend's bail at $25,000. *Monell*, 436 U.S. at 694. We disagree and affirm the judgment of the district court insofar as it granted summary judgment to the City.

In *Monell*, the Supreme Court held that "municipalities and other local government units" are "persons" who may be sued under § 1983. *Id.* at 690. At the same time, *Monell* emphasized that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Thus, "[t]he elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto*, 982 F.3d at 97. In other words, municipalities may not be held liable

would need to justify such a law. *Cf. Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) (noting "the deference afforded to legislative findings" and the courts' "obligation to exercise independent judgment when First Amendment rights are implicated … to assure that, in formulating its judgments, Congress has drawn reasonable inferences based on substantial evidence").

24

"unless action pursuant to *official municipal policy* of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691 (emphasis added). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

According to Friend, "Gasparino is a municipal policymaker" because his "decision on bail was, for 'practical' reasons, the last word," which meant that the $25,000 bail reflected municipal policy. Friend Br. 30, 38. We disagree. Gasparino's decision on bail was not the last word. The bail commissioner reviewed—and reversed— Gasparino's bail decision within hours. *See Agosto*, 982 F.3d at 94 (noting that decisions "reviewable by higher-level officials … could not be 'final' policymaking decisions"); *see also Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) (holding that a mayor could not be the final policymaker with respect to planning and zoning when the city council had "the power to override" the mayor's veto and "ha[d] the final vote" on zoning matters).

Gasparino's decision was not effectively unreviewable simply because it took some time for the bail commissioner to review it. But even if we were to conclude that Gasparino was effectively the last word for some limited period of time, "[i]t is not enough that an official had discretion to make a decision that was unreviewable. Rather, the official must have been sufficiently high up in the municipal hierarchy that he was responsible under state law for making policy in that area of the municipality's business." *Agosto*, 982 F.3d at 98 (internal quotation marks and citations omitted). "In identifying the official having authority with respect to a particular

issue, federal courts must analyze state law." *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008).

In *Agosto*, we affirmed the district court's grant of summary judgment to a city department of education. 982 F.3d at 101. The plaintiff, a teacher, sued the department on account of his school principal's disciplinary letters, which the plaintiff claimed constituted retaliation under the First Amendment. *Id.* at 93-94. We held that his claim failed under *Monell* because the plaintiff had "not identified a municipal policy that allegedly caused a constitutional violation." *Id.* at 91. Our analysis began by noting that the plaintiff "points to no state authority indicating that a New York City school principal has final responsibility under state law for making policy in any area of the Department of Education's business at issue in this case such that his edicts or acts would be considered to represent official policy for the entire municipality." *Id.* at 98 (internal quotation marks, alterations, and citation omitted). We additionally rejected the plaintiff's argument that the school principal was the "*de facto* final municipal policymaker on those specific matters involving" the plaintiff because "[a] municipality's going along with discretionary decisions made by its subordinates is not a delegation to them of the authority to make policy." *Id.* at 100 (internal quotation marks and alterations omitted).

As in *Agosto*, in this case Friend "points to no state authority" indicating that Gasparino has "final responsibility under state law for making policy." *Id.* at 98 (internal quotation marks and alteration omitted). The Connecticut law governing the duties of law enforcement officers in setting the terms and conditions of release of arrestees says nothing to indicate that a single patrol sergeant may set bail policy for the municipality. Conn. Gen. Stat. § 54-63c. The statute

26

contemplates only that individual *decisions*—including releasing an arrestee with a promise to appear—are within the authority of the police chief or his or her designees. *Id.* § 54-63c(f). That is insufficient to establish that the City vested Gasparino with the "authority to set final, municipality-wide policy." *Agosto*, 982 F.3d at 91.

In fact, Stamford Police Procedure 120, enacted by order of the Stamford Chief of Police, provides that "[d]esk [s]upervisor[s] shall" be "responsible for setting reasonable bonds to assure" an arrestee's "appearance in court." J. App'x 192-93.[8] Though the policy does not specify factors to be considered in assessing what is "reasonable" in this context, the record includes testimony that desk supervisors generally set bonds based on factors such as the seriousness of the charged offense and the arrestee's criminal history and community ties; desk supervisors also seek consistency with bonds previously set by senior officers, judges, and bail commissioners. J. App'x 215 (deposition of Sergeant Steve Perrotta); *id.* at 227 (deposition of Sergeant Ken Jarrett); *id.* at 266-67 (deposition of Lieutenant Nick Montagnesi).

Friend adduced testimony that, in practice, desk supervisors routinely permit lower-ranking patrol sergeants such as Gasparino to set bonds as a matter of "general[] defer[ence]" to the patrol sergeant's "more intimate knowledge of the person that was arrested, and what brought them there." *Id.* at 208-09 (deposition of Perrotta); *see also id.* at 223 (deposition of Jarrett). Friend argues that the authority to make policy was thereby devolved, and a "well-settled custom" empowered Gasparino to make municipal policy when he

---

[8] Desk supervisors outrank patrol sergeants and report to the "[c]ommanding [o]fficer of the [h]eadquarters [s]ection." J. App'x 192.

set Friend's bail. Friend Br. 30. Yet even if there were a "well-settled custom" of "general[] defer[ence]" to the patrol sergeant's bail determinations, that would at most establish that the City "[went] along with discretionary decisions made by its subordinates." *Agosto*, 982 F.3d at 100 (alteration omitted) (quoting *City of St. Louis v. Prapotnik*, 485 U.S. 112, 130 (1988) (plurality opinion)). Such acquiescence "is not a delegation … of the authority to make policy." *Id*. (quoting *Prapotnik*, 485 U.S. at 130).[9]

In this case, Gasparino was not the final decisionmaker because his decision was subject to review by the bail commissioner, who in fact reversed that decision. And even focusing on the period in which Friend awaited the bail commissioner's review, Friend's *Monell* claim fails for the additional reason that Gasparino was not a final policymaker. Were we to "equat[e] a final decisionmaker with a final policymaker," we "would effectively impose *respondeat superior* liability—making the municipality liable for the conduct of its employees—in violation of *Monell*." *Agosto*, 982 F.3d at 100. For these reasons, we affirm the judgment of the district court with respect to Counts Four and Five.

---

[9] Moreover, the record indicates that Gasparino's bail-setting decision was *inconsistent* with the City's bail-setting policy. According to his own account, Gasparino did not determine that the $25,000 bond was a "reasonable bond" to assure Friend's appearance in court but based the bond on Friend's "actions on scene and his, honestly, his personality from what I got from him." J. App'x 179-80. At oral argument, the City said that, based on the record at summary judgment, Gasparino's decision to set Friend's bail at $25,000 did not comply with its bail-setting policy. Oral Argument Audio Recording at 47:05.

## CONCLUSION

The district court erred when it held that Friend's arrest was supported by probable cause and that Gasparino's actions did not violate Friend's First Amendment right to freedom of speech. Because these were threshold determinations, we vacate the district court's grant of summary judgment as to Counts One, Two, and Three, and remand for further proceedings consistent with this opinion. We affirm the judgment of the district court as to Counts Four and Five.