*United States v. Hilliard*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of August, two thousand twenty-four.

**PRESENT:**
　　　　　　**ALISON J. NATHAN,**
　　　　　　**MARIA ARAÚJO KAHN,**
　　　　　　　　*Circuit Judges,*
　　　　　　**RICHARD K. EATON,**
　　　　　　　　*Judge.*[*]

_____

**United States of America,**

　　　　　　*Appellee,*

　　　　**v.**　　　　　　　　　　　　　　　　　　**23-6256**

**Tyquan Hilliard,**

_____

[*] Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

*Defendant,*

**Tawanna Hilliard,**

　　　　*Defendant-Appellant.*

_____

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | EZRA SPILKE, Law Offices of Ezra Spilke, Brooklyn, NY; Paula J. Notari, The Law Office of Paula J. Notari, New York, NY. |
| **FOR APPELLEE:** | NICHOLAS J. MOSCOW (David C. James, Lindsey R. Oken, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a March 15, 2023 judgment of the United States District Court for the Eastern District of New York (Chen, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Tawanna Hilliard appeals from her conviction and

sentence for witness retaliation and conspiracy to commit witness retaliation, in violation of 18 U.S.C. § 1513(e) and (f), and for obstruction of justice and conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(c)(2) and (k). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Hilliard's conviction arose from her role in helping post to YouTube two videos of witnesses cooperating with federal authorities who were investigating criminal activity by the 5-9 Brims gang. Hilliard's son, a member of the gang, had been arrested along with another gang member and that gang member's girlfriend on state charges after a robbery. The other gang member and his girlfriend cooperated with a federal officer and video recordings of their interviews were produced to counsel for Hilliard's son in the state criminal proceedings. At the request of her son, Hilliard obtained the recordings from her son's lawyer and coordinated with gang members to post the videos online with titles referring to "NYC Brim Gang Member SNITCHING!" and "NYC Brim Gang Member Girlfriend SNITCHING." Gov't App'x at 278; App'x at 282. The videos quickly garnered thousands of views, causing at least one of the

3

witnesses to receive violent threats and to have to be moved by federal agents for her own safety.

After Hilliard was convicted, the district court sentenced her principally to 33 months' incarceration. On appeal, Hilliard raises various challenges to her conviction and argues that her sentence is procedurally unreasonable because the district court erroneously applied the sentencing enhancement under Sentencing Guidelines § 2J1.2(b)(1)(B). We reject each of Hilliard's arguments and so affirm the district court's judgment.

## I. Challenges to the Witness Retaliation Counts

The jury convicted Hilliard of witness retaliation under 18 U.S.C. § 1513(e), which makes it a crime to "knowingly, with the intent to retaliate, take[] any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense[.]"

Hilliard argues that she was unconstitutionally convicted for speech

4

protected under the First Amendment—her uploading of the videos.[1]  In the alternative, she argues that even if her own activity in this case was not constitutionally protected speech, Section 1513(e) is facially overbroad.  And she further argues that Section 1513(e) is unconstitutionally vague.  We are not persuaded by any of these challenges to the witness retaliation statute.

We begin with Hilliard's as-applied First Amendment argument, which fails for the simple reason that Hilliard's uploading the videos in these circumstances was unprotected speech.  "From 1791 to the present . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas," which "historic and traditional categories" include "speech integral to criminal conduct."  *United States v. Stevens*, 559 U.S. 460, 468 (2010) (cleaned up); *see Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *Friend v. Gasparino*, 61 F.4th 77, 89 (2d Cir. 2023).  Thus, "speech is not protected by the First Amendment when it is the very vehicle of the crime itself."  *United States v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007) (cleaned up).

---

[1] Contrary to the government's argument, we conclude that Hilliard did not waive this argument by failing to raise it in the district court.  In her motion to dismiss the (operative) superseding indictment, Hilliard argued not only that Section 1513(e) is facially overbroad but also that it was "unconstitutional as applied" to her.  *See* Gov't App'x at 28, 31-33.

In this case, by convicting Hilliard, the jury found that she intentionally retaliated and conspired to retaliate against witnesses and that her "speech was an integral part of the retaliation." App'x at 1549. Because the First Amendment "does not 'extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute,'" Hilliard's conviction does not raise a First Amendment problem. *Friend*, 61 F.4th at 89 (quoting *Giboney*, 336 U.S. at 498). Speech is unprotected when, as here, it is "the very vehicle of the crime itself[.]" *Gagliardi*, 506 F.3d at 148 (quotation marks omitted).

To the extent Hilliard argues that her speech was not actually integral to any witness retaliation, we analyze that argument as a challenge to the sufficiency of the evidence and reject it. *See United States v. Hunt*, 82 F.4th 129, 135 (2d Cir. 2023) ("Where, as here, a defendant contends that the evidence did not establish that his speech was [in a category of unprotected speech], he challenges the sufficiency of the evidence supporting his . . . conviction.").

We evaluate sufficiency challenges "deferentially, construing the evidence in the light most favorable to the government, crediting every inference that

6

could have been drawn in its favor." *Id*. (quotation marks omitted). Under that standard of review, we will affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation marks omitted).[2]

There was ample evidence for the jury to find that Hilliard knowingly took actions harmful to the witnesses with retaliatory intent, and that her speech was an integral part of that intentional conduct. The jury was presented with evidence that Hilliard was familiar with the Brims and their practice of punishing cooperators with violence. That evidence included gang-related documents and correspondence found at her apartment, as well as her own notes on the videotaped interviews that memorialized one witness's concern that "[t]hey are gonna get me if I write statements." App'x at 590; *see* Gov't App'x

---

[2] Hilliard argues that we should apply the constitutional facts doctrine, under which courts "conduct an independent review of the record . . . to be sure that the speech in question actually falls within the unprotected category[.]" *Hunt*, 82 F.4th at 135 (cleaned up). We do not think the doctrine needs to be applied here, because the determination of whether Hilliard's speech was integral to her criminal conduct does not involve "elusive constitutional standards" and is more an "ordinary question[] of fact" than one "implicat[ing] legal principles." *Id.* at 136 (quotation marks omitted). But we do not need to resolve this dispute because, even if we reviewed the record without any deference to the jury's findings, we would still conclude that the government proved beyond a reasonable doubt that Hilliard's speech was integral to her retaliation.

at 290.  As the district court reasoned, even Hilliard's defense—that she wanted to expose the witnesses as cooperators to rebut a rumor that her son was cooperating, because her son was in danger for being thought a cooperator—implicitly demonstrated that she knew just how dangerous and harmful it was to be thought of as a "snitch" by gang members.

All this, combined with the fact that Hilliard coordinated the dissemination of the interview recordings with gang members and used a gang-related account name to post them, supports the jury's finding that Hilliard intended what she knew would likely follow from her actions.  There was sufficient evidence to find that Hilliard's speech was simply a means by which she furthered and carried out a course of intentional retaliation against the witnesses, thus falling comfortably within the category of unprotected speech integral to criminal conduct.

Hilliard also argues that, even if Section 1513(e) was constitutionally applied to her, the statute is facially overbroad.  We review overbreadth claims *de novo*.  *See United States v. Thompson*, 896 F.3d 155, 161 (2d Cir. 2018).  An overbreadth claim is a special kind of facial challenge that allows litigants to

8

whom a statute can be lawfully applied to nonetheless seek invalidation of the law because it "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (quotation marks omitted). Because overbreadth doctrine is "strong medicine that is not to be casually employed," for a law to be overbroad its "unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* (quotation marks omitted). "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Id.*

Hilliard fails to justify the use of such strong medicine here. The witness retaliation statute can be validly applied to all manner of non-speech retaliatory conduct: from physical violence, to harm to a witness's property, to firing a witness from a job. It can also be validly applied to various forms of unprotected speech, such as reckless true threats. Given the broad scope of its lawful applications, Section 1513(e) is not facially overbroad. Even if Hilliard could hypothesize realistic potential applications of the law that would violate the First Amendment, she cannot demonstrate that they are "substantially

9

disproportionate" to its "lawful sweep." *Hansen*, 599 U.S. at 770. To the extent any applications of Section 1513(e) might raise First Amendment questions, "as-applied challenges can take it from here." *Id.* at 785.

Nor does Hilliard succeed on her vagueness argument, which she appears to advance as both an as-applied and a facial challenge. A law is unconstitutionally vague in violation of due process "if it (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Brokamp v. James*, 66 F.4th 374, 403 (2d Cir. 2023) (quotation marks omitted). Criminal statutes are generally held to a higher standard than civil statutes regarding vagueness. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982). And vagueness analysis is especially "stringent" when a statute impinges on speech. *Holder v. Humanitarian L. Project,* 561 U.S. 1, 19 (2010) (quotation marks omitted). On the other hand, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* (cleaned up). In reviewing vagueness challenges *de novo* we "presume that acts of Congress are not

10

unconstitutionally vague." *See United States v. Houtar*, 980 F.3d 268, 273 (2d Cir. 2020).

"[W]e first consider [Hilliard's] as-applied challenge because a 'plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,'" a rule that "'makes no exception for conduct in the form of speech.'" *Brokamp*, 66 F.4th at 403 (quoting *Holder*, 561 U.S. at 20). Hilliard's conduct is clearly covered by Section 1513(e). The jury found that Hilliard knowingly retaliated against the witnesses for providing truthful information to a law enforcement officer, by publicly branding them as "snitches" in a way intentionally designed to call the Brims' attention to their cooperation with the government, to enable the gang to meet such cooperation with violent punishment. The statute's language readily provides fair notice that this conduct violates its prohibition against knowingly taking "any action harmful" against a witness "with the intent to retaliate." 18 U.S.C. § 1513(e). And since Hilliard's conduct is clearly proscribed by Section 1513(e), she cannot mount a challenge to its vagueness as applied to others. *See Brokamp*, 66 F.4th at 403.

11

## II. Challenges to the Obstruction Counts

Hilliard argues that the court erroneously instructed the jury on her obstruction charges and that there was insufficient evidence to convict on those charges. Neither argument succeeds.

Plain error review applies to Hilliard's jury instruction claim, because she did not object to the instructions below. *See Hunt*, 82 F.4th at 138. But even if it did not, we find no error with the district court's instructions. Hilliard was charged and convicted under 18 U.S.C. § 1512(c), which covers anyone who "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so[.]" 18 U.S.C. § 1512(c)(2). The provision covers obstruction in the form of "impairing the availability or integrity" of "things used in an official proceeding," including not just "records, documents, or other objects" but also "witness testimony or intangible information." *Fischer v. United States*, 144 S. Ct. 2176, 2186 (2024) (cleaned up). The term "official proceeding" is defined to include various federal proceedings including "a proceeding before . . . a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). The obstructed proceeding "need not be pending or about to be instituted at the time of the offense," *id.* §

1512(f)(1), but must be "reasonably foreseeable to the defendant," *United States v. Pugh*, 945 F.3d 9, 21 (2d Cir. 2019) (quotation marks omitted). Finally, the government need not prove that the defendant knew that the relevant proceeding was or would be a federal one. 18 U.S.C. § 1512(g)(1); *see Pugh*, 945 F.3d at 21.

Hilliard contends that the court should have instructed the jury that the government had the burden to prove that "she knew that there was an 'official proceeding,'" and that she "knew that the proceeding was specifically before a grand jury[.]" Appellant's Br. at 54–55. But the statute requires neither knowledge of a pending proceeding nor knowledge that a proceeding is or will be federal. To the extent that Hilliard argues that the indictment in this case specifically charged her with obstructing a proceeding she knew to be federal, we disagree. Consistent with the statute, the indictment charged her with obstructing an official proceeding, which in fact turned out to be federal.

Hilliard also challenges the sufficiency of the evidence supporting her conviction on the obstruction charges, claiming that the evidence at most showed that Hilliard knew of or reasonably foresaw a law enforcement investigation, and

13

did not intentionally direct any obstructive conduct at an official proceeding before a grand jury.   In essence, her claim is that there was insufficient evidence to satisfy the nexus requirement of the statute.   As we have explained, Section 1512(c)(2) requires "a 'nexus' between the defendant's conduct and the pending, or foreseeable, official proceeding."   *Pugh*, 945 F.3d at 21 (quotation marks omitted).   This is satisfied when "the defendant's acts have a relationship in time, causation, or logic with the judicial proceedings," meaning that the defendant's conduct "must have the natural and probable effect of interfering with the due administration of justice."   *Id.* at 22 (quotation marks omitted).

There was enough evidence for the jury to find this required link between Hilliard's conduct and a reasonably foreseeable federal grand jury proceeding. From watching (and taking notes on) the videotaped interviews, Hilliard knew that there was a federal investigation into a pattern of criminal activity related to the Brims and that the government had received significant cooperating testimony about that activity.   She also knew that her son and the witnesses had already been arrested by state authorities for some of the same conduct that was being federally investigated as part of a larger pattern of criminal activity.   It

14

was thus foreseeable that an official proceeding, such as a grand jury proceeding, would follow.  *Cf. Pugh*, 945 F.3d at 22 (reasoning that defendant's knowledge of a citizen criminally charged for attempting to join ISIS supported the inference that a similar proceeding was foreseeable to him for his similar conduct).  The fact that "every inquiry from [federal law enforcement] might not render a grand jury investigation reasonably foreseeable is of no avail" to Hilliard, because in these circumstances "there was sufficient evidence of foreseeability in this case." *United States v. Binday*, 804 F.3d 558, 590–91 (2d Cir. 2015), *abrogated on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023).

Finally, sufficient evidence supports a finding that Hilliard's retaliation—effectively placing a target on the witnesses' backs in retaliation for their cooperation with the government—had "the natural and probable effect" of interfering with the reasonably foreseeable grand jury investigation.  *Pugh*, 945 F.3d at 22 (finding that destruction of devices "to impair their use [as evidence] in a reasonably foreseeable official proceeding" satisfied nexus requirement).

"Viewed in the light most favorable to the government, and drawing all reasonable inferences in its favor, as we must," the evidence was sufficient for

the jury to conclude that Hilliard foresaw an official proceeding and retaliated against witnesses in order to impede use of their testimony in that proceeding. *Id.* at 23. Hilliard therefore cannot sustain the "heavy burden" of her sufficiency challenge. *United States v. Krivoi*, 80 F.4th 142, 155 (2d Cir. 2023) (quotation marks omitted).

### III. Evidentiary Challenges

Hilliard also argues that the district court wrongly admitted unfairly prejudicial gang-related evidence and wrongly excluded as irrelevant evidence that the video recordings of the interviews Hilliard posted were not subject to a protective order. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action," but relevant evidence may be excluded if "its probative value is substantially outweighed" by a risk of (among other things) "unfair prejudice." Fed. R. Evid. 401, 403.

We review a district court's evidentiary rulings "for abuse of the district court's broad discretion, reversing only when the court has acted arbitrarily or irrationally." *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006) (quotation

16

marks omitted). Our "highly deferential" review acknowledges "the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Gabinskaya*, 829 F.3d 127, 134 (2d Cir. 2016) (quotation marks omitted).

Here, the district court did not abuse its discretion with respect to either category of evidence. Hilliard emphasizes the potentially unfair prejudicial impact of gang-related evidence, highlighting testimony from an ex-Brims member about crimes the gang committed and the fact that he was shot for being a suspected cooperator, as well as testimony interpreting gang-related documents and terms. But evidence about Hilliard's familiarity with the Brims and about how that gang treats cooperators was clearly relevant to Hilliard's intent in bringing the witnesses' cooperation with the government to gang members' attention. It was highly probative of what she knew would happen if she exposed their cooperation to gang members, and therefore of what she may have intended in doing so. Additionally, evidence of the Brims' criminal activity was relevant to establishing the basis for the federal investigation and eventual grand jury proceeding that Hilliard obstructed. While Hilliard

17

complains generally about the potential unfair prejudice of evidence associating her with a criminal gang, she fails to show that the district court abused its broad discretion.

Nor did the district court abuse its discretion in deciding to exclude evidence that the videotaped interviews were not subject to a protective order in the state proceedings against Hilliard's son, absent any evidence that Hilliard was aware of this fact. Hilliard was not charged with violating a protective order. Whether or not the recordings were subject to a protective order is a fact that, standing on its own, does not make any element of Hilliard's charged offenses more or less likely to be true. As the district court put it, there were "many rules she probably didn't violate, but it's not an issue in this case." App'x at 321; *cf. United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) (explaining the general inadmissibility of "good acts" evidence).

Importantly, the district court allowed that Hilliard could discuss *her awareness* of the lack of a protective order as relevant to her intent, supporting an argument that she thought she was doing nothing wrong in posting the videos online. But the court determined—correctly—that the mere fact that the videos

18

were not covered by a protective order was irrelevant "[w]ithout some connection to Ms. Hilliard herself." App'x at 322. Simply put, it was not of consequence to the charged offenses that she did not also commit some other violation.

## IV. Sentencing Challenge

Finally, Hilliard challenges the procedural reasonableness of her sentence, arguing that the district court wrongly applied a sentencing enhancement for an offense that "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice[.]" U.S.S.G. § 2J1.2(b)(1)(B). The district court applied this enhancement because it found that Hilliard's posting the videos constituted an implicit threat to the witnesses, in order to interfere with the grand jury investigation. Hilliard argues that these findings were clearly erroneous, but we need not resolve that dispute because any error was clearly harmless.

The court unequivocally stated that it "would have given [the same] sentence regardless of the applicable advisory guidelines range." App'x at 1727. This "unambiguous indication" assures us that any potential error in

19

applying the enhancement was harmless. *United States v. Feldman*, 647 F.3d 450, 459 (2d Cir. 2011); *see United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) ("confidently" finding harmless error where "the district court unequivocally stated that it would impose the same 65-year sentence" regardless of a sentencing enhancement dispute).

\*　　\*　　\*

We have considered Hilliard's remaining arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

20